**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Earl HILLSBERG, Defendant-Appellant.**

**No. 85–2458.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1986.

Decided Feb. 17, 1987.

Certiorari Denied May 4, 1987.

See 107 S.Ct. 1981.

Richard L. Zaffiro, West Allis, Wis., for defendant-appellant.

R. Jeffrey Wagner, Asst. U.S. Atty., U.S. Atty., Joseph P. Stadtmueller, U.S. Atty's Office, Milwaukee, Wis., for plaintiff-appellee.

Before POSNER and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

After a jury trial, Earl Hillsberg was convicted of second degree murder and sentenced to life imprisonment. Because Hillsberg is a member of the Menominee Indian tribe and the killing occurred on the Menominee Indian Reservation in Wisconsin, he was prosecuted under 18 U.S.C. §§ 1153 and 1111. Hillsberg appeals. We have jurisdiction of the appeal under 28 U.S.C. § 1291. We will affirm.

## I.

On April 27, 1985, Earl Hillsberg spent the afternoon drinking with a number of companions at various bars. They adjourned to the home of one of the party, Charla Lyons, at about five in the afternoon. At about seven, Hillsberg left in the company of several others. On the way to the next tavern, the driver pulled over to the side of the road to afford the passengers a chance to relieve themselves. Standing outside the car, Hillsberg drew a .22 caliber semi-automatic pistol from his waistband and fired it twice in the air. The driver of the car took the pistol, unloaded it, and returned the pistol and ammunition to Hillsberg. Hillsberg placed the gun and ammunition in separate pockets.

The group then continued to a saloon, the Morning Side. They became embroiled in a brawl with members of the Stockridge tribe. They retreated to the car, where Hillsberg fired twice in the direction of their pursuers. They next returned to a party at the Lyons home, arriving around midnight.

Hillsberg entered the den of the house, where Marvin Pamonicutt was located with several others. Hillsberg asked for some of Pamonicutt's bottle of malt liquor. Pamonicutt demurred at first, then complied. The two began "acting tough," puffing out their chests. Pamonicutt removed his coat. There were no threats or blows exchanged. There was no pushing, jostling, or argument. Abruptly, Hillsberg said, "Don't fuck with me." He removed the gun from his waistband and pointed it at Pamonicutt's face, at the range of less than a foot.

The weapon discharged, fatally wounding Pamonicutt.

Hillsberg's memory of the night in question was limited. He testified that beginning with the drive to the Morning Side he felt "like I was just out of my body.... I was real drunk and I was just like on—I don't know. I was just functioning." He did not recall firing the pistol during the impromptu rest stop or at the tavern. He testified that at the Lyons home Pamonicutt made him angry, but he did not know why. He testified that he did not intend to shoot Pamonicutt, that he took the gun out only to scare him. He testified further that the feeling of being out of his body, of being a spectator to his own actions, disappeared after the shooting.

Before trial, Hillsberg filed notice pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure that he would present a defense of insanity. The psychiatrist that subsequently examined him, however, found that he did not suffer from a mental disease or defect. Hillsberg abandoned the insanity defense and the jury was not instructed on the defense at trial. Hillsberg's principal defense at trial was that he did not intend to kill Pamonicutt.

Hillsberg was convicted of second degree murder and sentenced to life imprisonment. On appeal, he attacks his conviction and sentence.

## II. Exclusion of Question to Psychiatric Expert

Hillsberg avers that the psychiatrist testifying as an expert for the defense should have been permitted to give his opinion as to whether, at the time of the shooting, Hillsberg had the capacity to conform his actions to the requirements of the law. The trial court sustained the government's objection to the question on the basis of Federal Rule of Evidence 704(b). We affirm the ruling.

Dr. William Crowley, Director of Forensic Services at Milwaukee County Medical Health Complex, testified for the defense. He had considerable experience in performing psychiatric examinations of defendants and testifying as to his findings. Dr.

Crowley had twice examined Hillsberg. He testified that Hillsberg was suffering from no mental disease or defect, but did have a "substance abuse disorder with the primary substance of abusing alcohol" and a "schizotypical personality disorder."

After Dr. Crowley testified to the above, Hillsberg's counsel constructed a lengthy hypothetical question, relating to whether Hillsberg had the capacity to form the requisite intent at the time of the killing. He asked Dr. Crowley to assume the circumstances leading to the confrontation and Hillsberg's intoxication. Dr. Crowley was asked his opinion as to whether, under those circumstances, Hillsberg would have had the capacity to conform his conduct to the requirements of the law. The trial court sustained the government's objection that the witness was improperly asked to give his opinion on an ultimate question of mental state under Fed.R.Evid. 704(b):

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

We agree that, under the circumstances of this case, the question called for the witness to say whether Hillsberg had the capacity at the time of the incident to form the specific intent required for a conviction of second degree murder. The trial court correctly instructed the jury that the intent required as an element of second degree murder is the intent willfully to take the life of a human being or the intent to act in callous disregard of the consequences to human life.

Whether the defendant had "the capacity to conform his actions to the requirements of the law" was formerly the "volitional prong" of the insanity defense in this jurisdiction. Until recently, we applied the American Law Institute's (ALI's) definition of insanity:

> A person is not responsible for criminal conduct if at the time of such conduct as

a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

*See United States v. Davis,* 772 F.2d 1339, 1343 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985). Congress recast that standard in 1984. Under 18 U.S.C. § 20,

It is an affirmative defense to a prosecution under any federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

This removed the "volitional prong," leaving only the "cognitive prong," the ability "to appreciate the nature and quality or wrongfulness of his acts." The mental states that fall under the two prongs are not mutually exclusive. A person unable to understand the nature and quality of his acts is likely to be unable to conform his behavior to the law. *Cf. United States v. Lyons,* 731 F.2d 243, 249 (5th Cir.), *cert. denied,* 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984) ("[T]here is considerable overlap between a psychotic person's inability to understand and his ability to control his behavior."). But the "volitional prong" does cover one class of acts that the "cognitive prong" does not: those where the actor comprehends his behavior but is unable to check himself. An example of this narrower sense of the "volitional prong" is where a person acts under the compulsion of an irresistible urge.

The broad meaning of the "inability to conform" language is reflected in the present case. The question, whether Hillsberg could conform his conduct to the requirements of the law, does not make clear what it asks about Hillsberg's mental state. It could have been interpreted by the jury in at least two ways, which correspond to the volitional (in the narrower sense) and cognitive prongs of the ALI insanity test. It could ask, in lay terms, "Was Hillsberg

unable to control an impulse to shoot Pamonicutt?" It could ask, "Did Hillsberg know what he was doing?" In the first sense, the question was irrelevant to the case. There was no testimony that Hillsberg acted under an irresistible impulse to shoot Pamonicutt. In the second sense, the question is dispositive of the issue of intent. An answer in the negative would say that Hillsberg could not have acted with the requisite intent, because he lacked cognitive capacity to form that intent.

The second sense of the question exemplifies the sort of opinion on ultimate factual issues that 704(b) reserves for the jury. Crowley had not otherwise testified about the effects of the "substance abuse" disorder or personality disorder on Hillsberg's mental capacities. The latter was merely mentioned by name, "schizotypical personality disorder," leaving the jury to guess as to what it might be. Without exploring the effect of Hillsberg's intoxication on his mental state, the inquiry went directly to whether or not, under the circumstances of the night of the shooting, Hillsberg lacked the capacity to form the intent required. The question was not posed in those specific legal terms; nor was it phrased in the terms of psychology. It merely rephrased the legal question in different terminology. Rather than using expert opinion to help the jury understand the factual issues in the case, the question called for the jury to take on faith the opinion of the expert as to Hillsberg's ability to form the intent required to commit murder. This is not a case where the psychologist gave an opinion in psychological or lay terms that, if accepted, would logically require a particular finding on an ultimate question of fact, but left that inference for the jury to make; the question called for the expert himself to make that final inference and decide the question in legal terms.

■ The trial court could also properly have excluded the question under Fed.R. Evid. 403, which permits exclusion where the probative value of evidence is outweighed by the danger that it would confuse the issues or mislead the jury. Here the standard was met by a substantial mar-

gin. The probative value of the question was slight. Dr. Crowley had already testified that Hillsberg suffered from no mental disease or defect. His testimony here was reduced, essentially, to the probable effect of alcohol on Hillsberg's mental state. The jury would likely have little knowledge of the effects of mental diseases and defects. Laymen do have occasion, however, to learn the effects of alcohol. Indeed, permitting an expert to describe the ordinary occurrence of intoxication in such orphic terms creates the danger of misleading the jury. *Cf. United States v. Bright*, 517 F.2d 584, 586 (2nd Cir.1975) (The court upheld the exclusion of testimony about defendant's "passive-dependent personality disorder" unaffected by psychosis or neurosis, reasoning that "Couched in simpler language [the psychiatrist] was prepared to testify that appellant was a gullible person.").

The question's potential to confuse the jury was great. As discussed above, the question was ambiguous, not making clear in what sense Hillsberg might have been unable to conform his actions to the requirements of the law. In addition, the question was framed in terms of a part of a test for the insanity defense, a part that Congress had recently deleted. The jury members need not have been aware of the phrase's history to infer a formal and conclusive import from the legalistic wording of the question. That gave rise to two dangers: the jury could mistakenly have assigned to the question a legal and conclusive significance that it did not have and the question could have improperly brought the insanity issue in through the back door.

■ Hillsberg argues also that exclusion of the question violated his Sixth Amendment right to present a defense. We recently noted that this theory is applicable to cases where the trial court's ruling results "in a defendant's total inability to present a theory of defense." *United States v. Brown*, 785 F.2d 587, 590 (7th Cir.1986) (Fifth Amendment right to testify not violated by exclusion of question where defendant permitted to introduce other evidence supportive of insanity defense). For example, there was no Sixth Amendment violation in excluding psychiatric testimony about defendant's depression, where defendant's wife and son had testified that he was depressed at the time of the crime. *United States v. Buchbinder*, 796 F.2d 910 (7th Cir.1986).

The Sixth Amendment might come into play if Hillsberg was foreclosed from presenting evidence of his intoxication, because it was central to his argument that he did not act with the requisite intent. "Courts will, of course, invalidate applications of evidentiary rules which prevent a defendant from presenting his view of the facts, and therefore violate the Sixth Amendment." *United States v. Davis*, 772 F.2d 1339, 1347 (7th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985). For example, in *United States ex rel. Enoch v. Hartigan*, 768 F.2d 161 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986), application of discovery rules prevented a witness from testifying who provided the sole basis for impeaching the testimony of the victim on a vital point. But in the instant case, Hillsberg was permitted to introduce ample evidence as to his intoxication. The court simply excluded a single question that called for an expert witness to give his opinion on an issue that the jury was able and obliged to decide.

### III. Denial of Request for New Counsel

■ Hillsberg next asserts error in the trial court's denial of his request at the beginning of the trial for a different defense counsel. Provided that defendant is given an opportunity to state his reasons for the request, denial of a motion for substitution of counsel constitutes reversible abuse of discretion only if there exists a demonstrable conflict of interests or if counsel and defendant are so at odds as to prevent presentation of an adequate defense. *United States v. Morris*, 714 F.2d 669, 673 (7th Cir.1983). Thus, denial is not reversible error where defendant abruptly states that he does not trust his attorney but gives no grounds for that distrust, *id.,* or where defendant and counsel have "per-

sonality conflicts and disagreements over trial strategy." *United States v. Davis,* 604 F.2d 474, 479 (7th Cir.1979).

■ In this case, Hillsberg and his appointed counsel had disagreed on a matter of trial strategy, whether Hillsberg should testify. Counsel willingly followed the strategy proposed by Hillsberg and he testified at trial. Beyond this issue Hillsberg expressed only a general dissatisfaction with his counsel. Since the conflict did not hamper, let alone prevent, the defense's presentation of its case, we find no abuse of discretion in denying the request for different counsel.

### IV. Other Acts Evidence

■ Hillsberg contends that the court erred in admitting evidence of his two previous uses of the gun on the day of the killing. Under Federal Rule of Evidence 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The pivotal issue at trial in the present case was whether Hillsberg intended to shoot Pamonicutt. Hillsberg testified that he "pulled the gun out and brought it up and it went off." He denied intending to kill Pamonicutt. He also testified that he took the gun out only to scare Pamonicutt. Evidence that twice that day he had taken the gun out and fired tended to prove that he again fired it intentionally, that the discharge was not accidental or inadvertent. That he had twice that day demonstrated his control over the firearm tends to negate the possibility that he mishandled it on the third occasion. *Cf. United States v. Tsin-nijinnie,* 601 F.2d 1035 (9th Cir.1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980) (evidence that defendant had a fight with his mother-in-law at a square dance admissible to show that it was not an accident when he subsequently

ran over her in a truck). The evidence was also relevant to Hillsberg's defense of lack of intent; his erratic behavior on the day was germane in determining his state of mind at the time of the fatal shooting. Nor is this substantial probative value outweighed by a prejudicial effect. Where two previous incidents resulted in no injury, they would not portray Hillsberg as having a propensity to murder nor be so heinous as to prejudice the jury against him. The prejudicial effect would be slight at best.

### V. Victim's Violent Propensities

■ Hillsberg's next contention is that the trial court wrongly excluded evidence of the victim's "violent propensities." Hillsberg attempted to introduce testimony from the victim's wife about a marital quarrel a week before the shooting. Hillsberg mistakenly relies on cases holding such evidence admissible when a self-defense defense is raised. Hillsberg did not claim that he acted in self-defense or that he was provoked. He testified that Pamonicutt in no way threatened him. Evidence of Pamonicutt's character was simply not pertinent.

### VI. Sufficiency of the Evidence

■ The next challenge to the conviction is that the evidence was insufficient to support the verdict. The applicable test is whether, viewing all the evidence and inferences from it in the light most favorable to the government, a rational jury could have found each element of the crime. *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984). Hillsberg does not deny shooting Pamonicutt. The only contested element is intent. As stated above, conviction of second degree murder requires that Hillsberg acted with malice aforethought, *viz.* with the intent to kill Pamonicutt or with callous and wanton disregard of the consequences to human life. The jury had ample evidence to support a finding of the requisite intent.

### VII. Photograph of Decedent

■ The next ground for reversal advanced is the admission of a photograph of

Pamonicutt's corpse. Hillsberg did not object to admission of the photograph, so the plain error standard applies here. Hillsberg contends that the photograph was unnecessary cumulative evidence and served only to "coagulate prejudice" against him. The photograph was cumulative, in that it was uncontroverted that Pamonicutt died from a bullet fired from Hillsberg's gun at close range. But the wound and powder burns on the victim's face, apparent in the photograph, served to give the jury a stronger indication of just where the gun was when it was fired than the uncertain testimony from a number of witnesses, some of whom had been in various states of inebriation at the time of the shooting. The trial court did not commit plain error in admitting the photograph.

## VIII. Excessive Sentence

■ Hillsberg further contends that the trial court violated his Eighth Amendment rights by sentencing him to life imprisonment, claiming that the sentence was grossly disproportionate to the severity of the offense. Hillsberg was convicted of second degree murder and had previous convictions of theft, disorderly conduct, resisting arrest, and battery. He argues, principally by rearguing the evidence regarding his intent, that this particular murder is somehow not blameworthy. The Supreme Court has held that a criminal sentence must be proportionate to the offense and that courts, while granting substantial deference to the legislature's choice of criminal penalties, should consider the following factors in reviewing sentences:

 (i) the gravity of the offense and the harshness of the penalty;

 (ii) sentences imposed on other criminals in the same jurisdiction; and

 (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983). Under these factors, a life sentence imposed upon a defendant convicted of second degree murder with Hillsberg's record of previous convictions could only be found condign.

*See Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (life sentence not excessive when imposed under Texas' "recidivist" statute upon defendant with convictions for fraudulent use of a credit card, passing a forged check, and obtaining money by false pretenses).

## IX. Recusal

■ Hillsberg maintains also that, under 28 U.S.C. §§ 455(a) and (b)(1), the trial judge should have recused himself after receiving a letter from defendant's mother about two weeks before trial. In the letter, Hillsberg's mother asked the judge to permit Hillsberg to plead guilty to manslaughter. She recognized that he must be punished if guilty, but stated that something must have snapped in his brain after he drank for fourteen hours. She also requested that he be imprisoned close to home.

The claim that the letter gave the judge "personal knowledge of disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b), is clearly unfounded. The letter did not give the judge any personal knowledge of the facts in the case, any more than reading the indictment would. At most, it informed him what the defendant's mother thought of the case. Also, "facts learned by a judge in his judicial capacity cannot be the basis for disqualification." *United States v. Patrick,* 542 F.2d 381, 390 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). Hillsberg's mother wrote to the trial judge as the judge in her son's case, so he received the letter in his judicial capacity.

Nor did the receipt of the letter make it a case where the judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). It would be unreasonable to conclude that the fact that a defendant's mother writes to the judge asking for mercy makes the judge partial. Were Hillsberg's argument accepted, any defendant who wished a change of judge would require no more than a note from his mother.

## X. Ineffective Assistance of Counsel

 Hillsberg maintains also that he was denied effective assistance of counsel, in violation of the Sixth Amendment. He alleges two "failures" of trial counsel supporting this proposition: failure to make motions alleging insufficiency of the evidence to support the conviction and failure to move for a new trial on the basis of post-trial out-of-court statements by jurors that the exclusion of the question regarding Hillsberg's mental state may have affected their verdict. "To establish his claim that he received ineffective assistance of counsel, petitioner must show that (1) his counsel's performance fell below objective standards of reasonableness, and (2) counsel's acts or omissions prejudiced the defense." *Keys v. Duckworth,* 761 F.2d 390, 392 (7th Cir.1985) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)). Since we find that the evidence was sufficient to support the conviction and that the question was properly excluded, Hillsberg could not have been prejudiced by the alleged omissions.

## XI Maligning Defendant

 Hillsberg urges also that the court committed plain error by referring to him as a "killer" in instructing the jury. He did not object to the instruction at trial. When the instruction at issue is read in its entirety, there is no likelihood of prejudice.

In determining whether Marvin Pamonicutt was unlawfully killed with malice aforethought, the jury should consider all the facts and circumstances preceding, surrounding, and following the killing as shown by the evidence in the case which tend to shed light on the condition of mind and heart of the killer before and at the time of the death.

Here, the court was not tarring Hillsberg with the epithet, "a killer." No pejorative reference to his character was implied. Rather, after twice using forms of the verb "kill," the court naturally referred to the agent of the killing as "the killer." A blander use of the word is difficult to imagine. Hillsberg had already conceded that he had unlawfully killed Pamonicutt. Any error would certainly not rise to the level of plain error.

## XII. Motion to Modify Record on Appeal

 Hillsberg has filed a motion under Rule 10(e) of the Federal Rules of Appellate Procedure to add an affidavit of Hillsberg's trial counsel to the record on appeal. In the affidavit, counsel relates that he had a conversation with one of the jurors after the trial. The juror told him that she and another of the jurors did not believe that Hillsberg had the requisite intent, but the two acquiesced in the decision of the panel. She also said that all the jurors had wanted to hear the psychiatrist's answer to the excluded question.

The purpose of Rule 10(e) is to ensure that the court on appeal has a complete record of the proceedings leading to the ruling appealed from, not to facilitate collateral attacks on the verdict. "Rule 10(e) does not give this court authority to admit on appeal any document which was not made a part of the record in the district court." *Borden Inc. v. Federal Trade Commission,* 495 F.2d 785, 788 (7th Cir. 1974). *Republic Steel Corporation v. Pennsylvania Engineering Corporation,* 785 F.2d 174, 179 n. 6 (7th Cir.1986). The court below denied Hillsberg's motion, made almost four months after trial, to add the affidavit to the record on appeal under Rule 10(e). The court ruled that "While the rule allows the district court to correct omissions and misstatements in the record, it does not allow the court to add to the record on appeal matters that might have been but were not placed before it in the course of the proceedings leading to the judgment under review." Immediately before discharging the jury, the court expressly asked if either side wished the jury polled. Both sides declined. This court has recently emphasized that jury verdicts cannot be attacked with evidence of the jurors' mental processes. *United States v. Schwartz,* 787 F.2d 257, 261–62 (7th Cir. 1986). Moreover, in view of our holding regarding the psychiatrist's testimony the information proffered in the affidavit

would not affect the outcome of this appeal.

## XIII.

For the reasons stated, Hillsberg's conviction and sentence are

AFFIRMED.