**UNITED STATES of America, Plaintiff,**

v.

**Jonathan POLLARD, Defendant.**

**Crim. No. 86–0207–AER.**

United States District Court, District of Columbia.

Sept. 11, 1990.

Hamilton P. Fox, III, Sutherland, Asbill & Brennan, Washington, D.C., for defendant Jonathan Jay Pollard.

Jay B. Stephens, U.S. Atty., for the District of Columbia, Daniel S. Seikaly, Alan Strasser, Asst. U.S. Attys., Washington, D.C., for the U.S.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

Nearly four years after pleading guilty to one count of conspiracy to commit espionage in violation of 18 U.S.C. § 794(c), defendant moves on several grounds to withdraw the plea and to stand trial. He files his motion under 28 U.S.C. § 2255. Defendant also moves that his counsel now be provided with access to certain materials made available to him and to the Court at sentencing, namely the classified memoranda submitted both by the Government and by then-Secretary of Defense Caspar Weinberger. Finally, defendant has supplemented his Motion to Withdraw Guilty Plea with an additional claim, previously maintained under seal, that the Government had *ex parte* contact with the Court prior to sentencing. Based upon the allegations this pleading contains, he also moves that the Court disqualify itself under 28 U.S.C. § 455.

The motion to disqualify and related materials, which the Court will now unseal,[1]

---

**1.** Defendant's Supplemental Memorandum in Support of Motion to Withdraw Guilty Plea was

has no basis and as explained below, will be denied. Because the disqualification motion challenges the ability of the Court to continue to hear this matter generally, the Court will address it first, as well as the substance of the section 2255 claim from which it arises. In addition, the Court has given careful consideration to each of the substantive claims in defendant's initial motion, and concludes that they too are without merit. Lastly, the Court finds that defendant's new counsel is not now entitled to examine the Weinberger Declaration or other classified sentencing memoranda. For the reasons that follow, defendant's motion to withdraw his plea will be denied without the discovery or hearing to which he believes he is entitled.

I. *The Court's Alleged Receipt of Ex Parte Material and Defendant's Motion to Disqualify the Court Pursuant to 28 U.S.C. § 455*

 A specific and supplemental ground offered as a basis for withdrawing his guilty plea leads defendant to argue that the Court cannot hear this matter because it is a witness to material facts and must testify at some future hearing. Defendant has submitted the sworn affidavit of Professor Alan Dershowitz.[2] In this affidavit, Professor Dershowitz reports a series of communications he had with former Supreme Court Justice Arthur Goldberg, who is now deceased. Dershowitz alleges that before he died, Justice Goldberg told Dershowitz of a conversation he claimed to have had with this Court regarding the sentence given defendant. In this conversation, as reported by Justice Goldberg to Mr. Dershowitz, the Court allegedly stated that in sentencing defendant, it relied upon certain materials provided by the Government to the Court *ex parte.*

These materials supposedly indicated, falsely, that defendant provided United States satellite intelligence to Israel about

Israeli missile programs in South Africa. Defendant believes that if the allegations in Mr. Dershowitz' affidavit are true, the Government violated its plea agreement with him and he is therefore entitled to withdraw his plea. He can only pursue this inquiry through an evidentiary hearing. According to defendant, the only available witness who can testify about the matter is the Court. Hence, the Court must disqualify itself.

Title 28 of the U.S.Code, section 455 provides that a Judge of the United States shall disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In addition, "[h]e shall also disqualify himself ... [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(b). Defendant's focus in invoking the section is upon the role he perceives for the Court in shedding light on the question whether any *ex parte* communication occurred. Recusal is required, he argues, both because the Court has personal knowledge regarding this disputed fact and because, given his allegations, a reasonable person may have doubts concerning the Court's impartiality.

Of course, to justify disqualification the Court's knowledge of disputed facts, or any alleged bias, must have an extrajudicial source. "[K]nowledge gained through the court's judicial role is not 'personal' knowledge within the meaning" of section 455. *United States v. Heldt,* 668 F.2d 1238, 1274 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). Moreover, "alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge leaned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

originally placed under seal on the advise of the Court Security Officer that it contained classified material. Subsequent review revealed that that the material is not classified. Consequently, there is no basis to maintain this and related pleadings under seal.

2. Although in his affidavit Professor Dershowitz advises that he is one of defendant's lawyers, he has entered no appearance in this case.

Here, the knowledge at issue—whether the Court received any information about defendant from the Government *ex parte*—is clearly knowledge gained by the Court in its judicial role. The Court "knows" that it did not receive such information, as is in fact the case, because and only because of its participation in this criminal action against defendant. The Government cites two cases which indirectly bolster this point. In *United States v. Hillsberg*, 812 F.2d 328 (7th Cir.1987), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987), the trial court received a letter from the defendant's mother. Defendant argued that the letter gave the court personal knowledge of disputed evidentiary facts and put its impartiality in question. According to the Seventh Circuit, "Hillsberg's mother wrote to the trial judge as the judge in her son's cases so he received the letter in his judicial capacity." *Id.* at 335. *See also United States v. Meester*, 762 F.2d 867, 885 (11th Cir.1985) (no recusal required because of phone call from bonds-

man reporting defendant's escape, which court received in judicial capacity, or from review of *ex parte* evidence and denial of motion for access, action which Court took in judicial capacity).

Defendant correctly points out that these cases miss the mark somewhat, but he does so for the wrong reason. The court's "knowledge" in *Hillsberg* and *Meester* came from the *ex parte* materials themselves. Here, the threshold issue is whether contact occurred at all. Thus, pointing to the open and proper—undeniably "judicial"—manner in which the court acted in these and similar cases,[3] defendant posits that the alleged *ex parte* communication here would have been "received by the court without notice and without opportunity to object." According to defendant, "this does not constitute proper judicial action," and presumably therefore could not lead to knowledge gained in a judicial capacity. *See* Def. Reply to Gov't Opp. to Mot. to Disqualify at 8 n. 7. This may or may not be so.[4] The question is irrelevant

---

**3.** *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C.Cir.1988) (motion based upon judge's prior ruling from bench), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *United States v. Heldt*, 668 F.2d 1238, 1272 (D.C.Cir.1981) (motion based upon security measures taken by trial court), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Widgery*, 778 F.2d 325, 328 (7th Cir.1985) (alleged knowledge of judge of disputed facts derived exclusively from trial).

**4.** Defendant cites *Price Bros. co. v. Philadelphia Gear Corp.*, 629 F.2d 444 (6th Cir.1980), and *United States v. Van Griffin*, 874 F.2d 634 (9th Cir.1989), for the proposition that improper judicial conduct is not within the Court's duties and therefore may violate § 455. Again, that may be so, but the these cases simply do not control here. In *Price Brothers*, the judge allegedly sent his law clerk to gather evidence. Thus, he gained knowledge of disputed facts on his own initiative and utterly independent of his role as judge.

*Van Griffin* dealt with the circumstance where a magistrate failed to dispossess himself of an *ex parte* law enforcement report, an action which the Ninth Circuit held would cause a reasonable person to doubt his impartiality. The issue was bias, not knowledge of disputed facts. Of course, defendant here claims that his allegations create a similar doubt. *See* Def.Mot. to Disqualify at 5. But his case is not similar. There was no factual issue in *Van Griffin*. The

Magistrate admittedly received and retained the report and, faced with this mistake, he should have granted Van Griffin's motion to disqualify.

In this case, even assuming the bias alleged was extrajudicial, defendant plainly poses a factual dispute on which the existence of bias must turn: whether *ex parte* contact occurred. If the allegation is baseless, there is no actual or apparent partiality, and the court may deny even a hearing on the recusal motion. *See United States v. Rivera*, 802 F.2d 593, 601 (2d Cir.1986); *United States v. Balestrieri*, 779 F.2d 1191, 1202 (7th Cir.1985) ("[T]he judge is free to make credibility determinations, assign to the evidence what he believes to be its proper weight, *and to contradict the evidence with facts drawn from his own personal knowledge*) (emphasis added); *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C.Cir.1981) (section 455 contemplates "some evaluation by the court of the facts giving rise to the motion...."), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). This Court assumes that the Seventh Circuit's reference to "personal knowledge" is limited to personal *judicial* knowledge—and this Court has already found that its knowledge whether *ex parte* contact occurred is in fact judicial.

Turning to this evaluation, the following can be said: Defendant's allegation about the source of bias is simply not credible. It is based upon double hearsay. The primary declarant is the Court itself, which has a directly contradictory recollection of events. The secondary declarant is dead. The Government denies the conduct

because the "judicial capacity" issue in this case does not turn upon the propriety or impropriety of the conduct alleged by defendant. The issue is the Court's *knowledge* of what actually happened. Defendant's proposed inquiry into what the Court *knows* —again, whether contact occurred—could only be answered by reference on the part of the Court to its participation in this case. In that sense, the Court's knowledge that the *ex parte* communication described by defendant did not occur was indisputably gained in its judicial capacity. Section 455, therefore, does not require recusal, and defendant's motion for disqualification must be denied.

■ The Court turns then to the substance of defendant's claim that under 28 U.S.C. § 2255, he should be permitted a hearing and discovery into the possibility that *ex parte* contact took place. Section 2255 provides that a federal prisoner may attack his sentence where that sentence was imposed in violation of the Constitution or law, exceeded the prescribed maximum, was assessed without jurisdiction, or is "otherwise subject to collateral attack." The provision calls for relief, for example, where a plea or sentence arose from "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

By the terms of section 2255, a motion may be made at any time, however this Court need not grant a hearing where controverted factual issues can be determined by the motion itself, by the trial court's files and records, or by the district judge's personal knowledge or recollection. *See generally* 28 U.S.C. § 2255; *see also Ma-*

*chibroda v. United States,* 368 U.S. 487, 494–95, 82 S.Ct. 510, 513–14, 7 L.Ed.2d 473 (1962); *Virgin Islands v. Nicholas,* 759 F.2d 1073, 1077 (3d Cir.1985); *Abatino v. United States,* 750 F.2d 1442, 1444 (9th Cir.1985).

Quite obviously, the "personal knowledge" sanctioned for use by the district court on a motion under section 2255 is distinct from the "personal knowledge" which would require recusal under section 455.[5] The former is knowledge gained in a judicial capacity, and its use properly ensures that only palpably credible collateral attacks receive full-blown hearings. Indeed, "it is highly desirable that the motions be passed on by the judge who is familiar with the facts and circumstances surrounding" the case, and as a result "is not likely to be misled by false allegations as to what occurred." *Carvell v. United States,* 173 F.2d 348, 349 (4th Cir.1949).

The Court's determination regarding the credibility of defendant's allegations in the section 455 context, *see supra* note 4, applies equally here. The claim of *ex parte* contact by the Government is based upon pure hearsay, twice over. The Court's recollection of events is in stark contradiction to that claim. While the burden falls upon defendant to prove the *ex parte* communication, *cf. Campbell v. Wainwright,* 738 F.2d 1573, 1576 (11th Cir.1984) (no evidentiary hearing required on allegation based solely on counsel's affidavit of ambiguous facts), *cert. denied,* 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986), he offers no other evidence. It is difficult to see what a hearing would achieve, nor in any event is one justified by the bare affidavit proffered. Defendant's request for a hearing on his allegation, and ultimately to

---

alleged. The affiant has no independent evidence of the truth of his claim that *ex parte* communication occurred. Nor could he, because the claim is false.

5. Clearly, sections 2255 and 455 must be construed together. "It would be anomalous, indeed, having determined that the purpose of section 2255 was to permit the trial judge, because of his familiarity with the proceedings and ability *to supplement the record,* to pass

upon motions thereunder, now to ascribe to Congress the intention to disqualify any judge possessing that familiarity with the proceedings from passing upon the motion. *United States v. Smith,* 337 F.2d 49, 53 (4th Cir.1964) (emphasis supplied), *cert. denied,* 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965). A district judge is not disqualified from determining a section 2255 motion precisely because his useful familiarity with the case is gained in a judicial capacity.

withdraw his plea on this basis and be resentenced, will therefore be denied.

## II. *The Government's Adherence to the Plea Agreement; The Voluntariness of Defendant's Plea*

■ By his main motion, defendant claims three defects in his guilty plea and sentencing which require the withdrawal of the plea and trial. First, defendant argues that the Government breached its plea agreement with him. He asserts that the Government violated its promise not to seek a life sentence because "the entire tenor of its written and oral submissions at sentencing was a request for just such a sentence." Def.Mot. to Withdraw Plea at 1. Moreover, according to defendant, the Government failed to limit its statements to the facts and circumstances of defendant's crimes, and failed to advise the Court adequately of defendant's cooperation. The plea agreement provided for each of these promises expressly.

Second, defendant contends that the Government improperly argued, and the Court improperly found, that he had violated the plea agreement when he gave an interview to a journalist without following certain steps required by the agreement. Finally, defendant claims that his plea came involuntarily because under the terms of the plea agreement, unless he entered a plea of guilty, his ill wife could not do so. As defendant was concerned for his wife's health and intent on avoiding a prison term for her, he argues that his plea was unlawfully compelled.

Again, the burden placed upon a defendant in a post-sentence effort to withdraw a guilty plea is a demanding one. Together, Rule 32(d) and section 2255 provide that in order to succeed, a defendant must demonstrate that a "manifest injustice" would result in allowing his plea to stand. *See United States v. Griffin*, 816 F.2d 1, 5 (D.C.Cir.1987). This "stringent standard for post sentence plea withdrawal motions is intended to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe." *United States v. McKoy*, 645 F.2d 1037, 1040 n. 3 (D.C.Cir.1981).

Because the files, records, transcripts and this Court's recollection of the challenged proceedings more than adequately answer defendant's claims, and show that no miscarriage of justice occurred, the Court finds that it must reject them as a matter of law.

### A. Plea Agreement Violations in the Government's Submissions and Allocution

In its written agreement with defendant, the Government obligated itself as follows:

> Notwithstanding Mr. Pollard's cooperation, at the time of sentencing the government will recommend a sentence of a substantial period of incarceration and a monetary fine. The Government retains full right of allocution at all times concerning the facts and circumstances of the offenses committed by Mr. Pollard, and will be free to correct any misstatements of fact at the time of sentencing, including representations of the defendant and his counsel in regard to the nature and extent of Mr. Pollard's co-operation.

Plea Agreement at 3.

In addition, the Government promised to:

> bring to the Court's attention the nature, extent and value of [defendant's] cooperation and testimony ... the Government has agreed to represent that the information Mr. Pollard has provided is of considerable value to the Government's damage assessment analysis, its investigation of this criminal case, and the enforcement of the espionage laws.

*Id.* at 4(b).

#### 1. *The Weinberger Declaration*

To demonstrate that the Government in fact argued for a life sentence, defendant points to unclassified portions of Secretary Weinberger's Declaration ("Weinberger Decl." or "Supp. Decl."). For example, the Declaration stated the Secretary's view that "[p]unishment, of course, must be appropriate to the crime,' and in my opinion, no crime is more deserving of severe pun-

ishment than conducting espionage against one's own country." Weinberger Decl. at 45. The Secretary also reported his view that even in the "year of the spy," it was difficult for him to conceive of greater harm to the national security than that caused by defendant. Supp.Decl. at 1–2. Weinberger submitted that defendant's punishment should reflect among other things, "the magnitude of the treason committed." *Id.* at 2. Finally, the Secretary offered his opinion that defendant's loyalty to Israel transcended his loyalty to the United States. *Id.* at 3.

Defendant reads these passages as inaccurately implying he had the intent to harm the United States. Moreover, to defendant the Secretary's call for "severe" punishment "cannot be misinterpreted: the most severe punishment appropriate for the most severe crime is the maximum sentence." Def. Mot. to Withdraw Guilty Plea at 19–20. Defendant also believes that comments upon his loyalty went beyond the facts and circumstances of his crime.

These claims are utterly without basis. The opinion that a "severe" sentence is warranted in no way means that *the* most severe sentence should be imposed. The purpose of the Secretary's Declaration was to provide the Court with his opinion of the damage to the national security done by defendant's disclosures. Whether or not defendant intended that damage, and the Court and counsel specifically noted the relevant statutory distinction, *see* Sentencing Transcript at 4, the Secretary's point was that defendant had in fact caused severe damage, and on a grand scale. His offhand use of the word "treason"—a term commonly applied by the public to individuals who violate their loyalty to the United States—does not change this fact, nor does it in any sense secretly call for a life sentence. Defendant's loyalty to Israel was directly relevant to the motivations which drove him to commit espionage, as defendant himself has admitted.

Defendant had a full opportunity to review the Weinberger Declaration, unredacted, prior to sentencing. He challenged its reliability and its veracity in a very general way, but offered nothing specific to contradict it, though the Court noted and counsel agreed that defendant himself was quite able to assess the technical aspects of the Declaration. Defendant merely claimed the document was "speculative", "seriously flawed" and exaggerated. It simply cannot be said that the Weinberger Declaration served to end-run the Government's promise to request merely a "substantial," rather than a life sentence. The phrases defendant seizes upon do precisely what the Government agreed to do: argue for a substantial term of imprisonment, and no more.

### 2. The Government's Allocution and the Facts and Circumstances of Defendant's Crimes

The Government limited itself so as only to permit discussion of to the facts and circumstances of defendant's crimes. Defendant asserts that the Government's explanation of its view of defendant's motive, and conclusions that he lacked remorse and exhibited a deceptive and arrogant nature, violated the agreement, and implied that he should receive a life sentence. Defendant relies primarily on *United States v. Moscahlaidis*, 868 F.2d 1357 (3d Cir.1989). In *Moscahlaidis,* the Government had agreed not to seek any custodial sentence at all. The Third Circuit found a violation of this promise when the Government discussed Moscahlaidis' "greed," "moral bankruptcy," and "utter contempt" for his fellow man. This case is inapposite. The Government here did not agree not to take any position at all; rather, it announced its intention to seek a severe sentence. Other cases cited by defendant are similarly distinguishable. *See United States v. Crusco*, 536 F.2d 21 (3d Cir.1976) (Government promise to take no sentencing position); *United States v. Cook,* 668 F.2d 317 (7th Cir.1982) (promise to take no sentencing position or to provide material in aggravation).

Moreover, motive and character, insofar as they place defendant's conduct in some context and assist in the sentencing decision, are facts and circumstances of defendant's crimes, and are directly relevant to

the Court's task at sentencing. *See, e.g.,* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.") The Court finds that the Government's allocution and pleadings did not violate the plea agreement's requirement that it limit itself to the facts and circumstances of defendant's crimes.

### 3. Adequacy of the Government's Comments About Defendant's Cooperation

Defendant also contends that the Government's comments about his cooperation were inadequate to satisfy its obligations under the agreement. Again, he asserts that these comments constituted a poorly hidden attempt to secure a life sentence. In fact, defendant simply disagrees with the Government's assessment of his cooperation, as he made clear at the time of sentencing. The Government reported defendant's cooperation in the plea agreement itself, in its first Memorandum in Aid of Sentencing and its Classified Sentencing Memorandum. These materials explained in some detail the manner, extent and value of defendant's efforts.

In any event, prior to sentencing the Court and the parties addressed this very issue.[6] Defendant made no further objection on the question. His argument, freshly posed, is no more persuasive now. Defendant claims that by "casting aspersions" on defendant's cooperation, the Government completely undercut the statements it made earlier. For example, the Government noted that defendant's delay in cooperating allowed certain co-conspirators to flee the United States. It was no

violation of the plea agreement for the Government to explain the positive value of the cooperation in one sense (damage assessment), while also noting that defendant had frustrated Government efforts in another sense (law enforcement). The record in this case does not support the contention that the Government failed in its obligation. It did not dryly recite in a few declarative sentence that defendant had cooperated. It did much more, as it had said it would. In short, the Government kept its promise.

### B. Government's Comments About Defendant's Media Interview

Next, defendant complains that the Government discussion of his prison interview with a journalist following his guilty plea also constituted a breach of the plea agreement. He argues that if the interview violated the plea agreement, he was entitled to a formal hearing and findings. To defendant, the Government comments again reflected its effort to persuade the Court to impose a life sentence, violated due process and themselves constituted a breach of the plea agreement.

This argument can be disposed of easily. In the plea agreement, defendant was bound as follows:

> Should Mr. Pollard at any time author any book or other writing, or otherwise provide information for the purposes of publication, he hereby agrees to first submit said book, writing or information to the Director of Naval Intelligence for pre-publication review and deletion of information, which, in the sole discretion of the Director of Naval Intelligence, is or should be classified.

---

**6.** *See* Sentencing Transcript at 63:

THE COURT: [To counsel for the Government] Do you want to address what Mr. Hibey [defendant's counsel] has suggested, that nowhere in the Government's allocution has there been any honest attempt by the Government to indicate any value in Mr. Pollard's post-plea efforts?

MR. LEEPER: I will address that in about ten words, your honor. It was in the very first pleading we filed, your honor.

THE COURT: I thought it was.

MR. LEEPER: It was in the classified version of the pleading that we filed with your honor, called the Government's Classified Sentencing Memorandum. I believe it was filed on the 9th of January. But I have nothing further, your honor.

THE COURT: Does that refresh your recollection, Mr. Hibey?

MR. HIBEY: Yes, sir.

Plea Agreement at 9. Defendant gave the interview without clearing or submitting to Naval Intelligence any of the information he discussed with the reporter.

Defendant characterizes the Government's discussion at sentencing as alleging that he disclosed classified information to the reporter in violation of the agreement. At the hearing, the Court made clear that it understood the Government's argument differently: that the mere *fact* of the interview revealed defendant's view that his assessment of what could or could not be disclosed should control. *See* Sentencing Transcript at 60. The episode also was relevant to defendant's veracity. These were certainly factors the Court could consider in imposing sentence. Defendant's counsel contested the idea that the interview revealed classified information, but he agreed fully with the Court that defendant had utterly failed to comply procedurally with the provision quoted above. There was no factual dispute whatsoever in that regard.[7] The Government's allocution on this point did not breach the plea agreement.

## C. The Voluntariness of Defendant's Plea

Defendant claims that his plea was involuntary, since it was "wired" to that of his wife, and that this fact, coupled with the Court's failure at sentencing to directly inquire whether his plea was voluntary, mandates withdrawal. Assuming without deciding that these claims are timely, both must fail. First, although the Supreme Court had reserved judgment on prosecuto-

rial promises of lenient or adverse treatment of third parties in plea negotiations, *see Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978), the Circuits addressing the issue have approved such arrangements. In *Politte v. United States*, 852 F.2d 924, 930 (7th Cir.1988), the court specifically held "that a good faith prosecution of a third party, coupled with a plea agreement which provides for a recommendation of a lenient sentence for that third party, cannot form the basis of a claim of coercion by a defendant seeking to show that a plea was involuntarily made." *See also Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988) (threat of prosecution of wife, previously indicted, "cannot support a claim of coercion"); *Harman v. Mohn*, 683 F.2d 834, 837 (4th Cir.1982) (same); *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir.1979) (same; "As a threshold matter, we see no constitutional infirmity in broadening plea negotiations so as to include third party beneficiaries.").

By the same token, the Court's failure specifically to inquire of defendant by rote whether his plea was voluntary neither is cognizable under section 2255 nor constitutes a "fundamental defect which inherently results in a complete miscarriage of justice." *See Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Rule 11 provides that the Court "shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary...."

---

**7.** The following colloquy at sentencing about the interview is self-explanatory. Defendant did not dispute that he had violated the procedural requirements to which he had bound himself:

THE COURT: You just take the position that there was nothing wrong with it?

MR. HIBEY: No, I am not saying that. The whole action was ill-advised, unauthorized, there is no question about that in my mind. What I am still trying to point out is the fact that the information was unclassified.

THE COURT: And all the Government is arguing is that that is consistent with his view that it is his determination on all these things that controls and not anybody else's, even when he is before the Court. That is all the Government was trying to say, for sure, but

they can say it better than I can. But that is the thrust of the argument, as I understood it. Didn't you understand it that way?

MR. HIBEY: No.

THE COURT: All right.

MR. HIBEY: That is the only reason why I took issue with it. But as the Court has stated it, I obviously and will not recede from your interpretation of it.

THE COURT: Oh, feel free.

MR. HIBEY: No, No, No. I am saying this because you are correct in your interpretation * * * My argument is, he didn't [give classified information]. But, yes, your honor, you are correct, that it was done without the pre-clearance procedure.

Fed.R.Crim.Pro. 11(d). In *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court held that technical violations of Rule 11 are "neither constitutional nor jurisdictional," and foreclosed relief on such complaints under section 2255 altogether. *Id.* at 784, 99 S.Ct. at 2087.

Even assuming that the plea agreement provision dealing with defendant's wife created a sufficiently "aggravating circumstance" to avoid this initial hurdle, *see id.* at 785, 99 S.Ct. at 2088, no manifest injustice occurred at the sentencing hearing in this case, and no section 2255 relief obtains. The Court satisfactorily determined that the plea was voluntary through a series of questions addressed to defendant and his counsel, including inquiries regarding defendant's understanding of the charge and its consequence, his rights at trial, and the extent to which defendant had discussed all aspects of his actions with his attorney. Defendant's counsel then volunteered that defendant came before the Court "knowingly, and voluntarily enters his plea." Transcript of Plea Proceedings at 7. Shortly thereafter, the Court pointedly inquired of defendant: "Do you know of any reason that I shouldn't accept your plea?" He responded: "No sir, I don't." *Id.* at 8.

This exchange in open court unquestionably satisfied Rule 11. The Court's questioning of defendant and his counsel formed a perfectly adequate basis for the Court's determination that the plea came voluntarily. Defendant was provided ample opportunity to bring his claimed misgivings to light. Instead, he persuaded the Court that he understood the consequences of his actions, and faced them willingly. The Rule requires nothing more.

The Government lived up to its obligations under the plea agreement. It refrained from advocating a life sentence, limited its allocution to the facts and circumstances of defendant's crimes and adequately advised the Court of defendant's cooperation. The Government's discussion of defendant's failure to comply with the plea agreement in granting a media interview, as the Court understood it, was directly relevant to sentencing. Lastly, the provision for joint pleas by defendant and his wife did not render defendant's plea involuntary, and the Court adequately determined the voluntariness of that plea as required by Rule 11. Defendant's motion to withdraw Guilty Plea will therefore be denied.

### III. Defendant's Motion for Access to the Classified Weinberger Declaration

■ On the assumption that classified portions of the Weinberger Declaration would bolster defendant's claim that the Declaration implicitly argued for a life sentence, defendant's newly-retained counsel received a security clearance and sought access to the document as well as other classified sentencing memoranda. The Government resisted, and defendant filed a motion for an order permitting him to review it. The Court holds that the materials need not be provided to defendant's counsel to assist his section 2255 effort.

There are analogous cases dealing with requests for access to presentence reports to support motions to reduce sentence. In *United States v. Lewis*, 743 F.2d 1127 (5th Cir.1984), the Fifth Circuit upheld the District Court's refusal to allow access to a presentence report, citing a number of factors: (1) the defendant "alleged no facts to show that the sentence was a gross abuse of discretion"—his claims were "wholly conclusory;" (2) lack of access did not prevent his counsel from presenting the information contained in the presentence report—defendant's background and record; (3) "Furthermore, [defendant] himself has read the report, and he and his prior counsel commented upon it at sentencing"—there was no allegation that prior counsel was unavailable or incompetent, or that defendant did not remember or understand the report. According to the court in *Lewis*, refusal to supply the report post-sentence was no due process or Sixth Amendment violation. *Id.* at 1129. Similarly, *United States v. Bernstein*, 546 F.2d 109, 110 (5th Cir.1977) held that it was no error to withhold a presentence report from new counsel seeking a Rule 35 reduction in sentence. *See also United States v.*

*Buckley,* 847 F.2d 991, 1003 (1st Cir.1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989).

Each of the factors identified in *Lewis* apply with some force here. As pointed out in section II.A, *supra,* defendant's claims of exaggeration and inaccuracy in the unclassified portion of the Weinberger Declaration simply do not withstand scrutiny. The sentence here was well within the Court's discretion. Defendant's current counsel has access both to defendant and, presumably, prior counsel and his files. More importantly, defendant's previous attorney, who was quite competent, commented extensively on the Weinberger Declaration and other classified submissions. There is no allegation that either defendant or prior counsel cannot recall the substance of these materials.

Defendant attempts to distinguish this line of cases by casting the Declaration in particular as a "pleading," to which he believes he should be given automatic access. The prosecution did not prepare the Declaration; instead, the Secretary of Defense prepared it. While the Secretary may not have been neutral and detached, his submission is analogous to a presentence report. Both types of material are evidentiary in nature and designed to assist the Court in sentencing by providing context for a given crime which at points is unavoidably subjective. Moreover, defendant's claim to other classified sentencing material relies completely on perceived exaggeration and inaccuracy in the Weinberger Declaration. This perception is totally unfounded and defendant has made no showing to justify access to these sensitive documents.

Defendant's Motion for Access to Materials Presented at Sentencing will be denied.

An appropriate Order accompanies this Memorandum.

### ORDER

Upon consideration of Defendant's Motion to Recuse the Court under 28 U.S.C. § 455, Motion to Withdraw Guilty Plea, Supplemental Memorandum in Support of Motion to Withdraw Guilty Plea and Mo-tion for Access to Materials Presented at Sentencing, the Government's opposition thereto and the entire record in this matter, and in accordance with the Memorandum entered this date, it is by the Court this 10th day of September, 1990,

ORDERED, that Defendant's Supplemental Memorandum in Support of Motion to Withdraw Guilty Plea, and related pleadings, and Defendant's Motion to Recuse the Court under 28 U.S.C. § 455 and related pleadings, be and hereby are UNSEALED, and the Clerk shall file them on the public record; and it is

FURTHER ORDERED, that Defendant's Motion to Recuse the Court under 28 U.S.C. § 455 be and hereby is DENIED; and it is

FURTHER ORDERED, that Defendant's Motion to Withdraw Guilty Plea be and hereby is DENIED; and it is

FURTHER ORDERED, that Defendant's Motion for Access to Materials Presented at Sentencing be and hereby is DENIED.