**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Henry ARELLANO, also known as Henry Gonzalez, Defendant–Appellant.**

**No. 97–1500.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1998.

Decided March 3, 1998.

Juanita S. Temple (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Mickey Forbes (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, RIPPLE and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In June 1995 an indictment was returned charging defendant Henry Arellano as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was given notice that he qualified for treatment as an armed career criminal under 18 U.S.C. § 924(e) and

that conviction would result in imprisonment of a 15–year minimum.

Defendant was subsequently convicted after a jury trial. His trial counsel was permitted to withdraw in March 1996, with substitute counsel thereafter appointed. In February 1997 he was sentenced to 235 months in prison plus a three-year term of supervised release and a $5,000 fine.

Around 9:40 P.M. on March 11, 1995, James Perry left his apartment on the corner of Kedzie and Fullerton Avenues in Chicago. He was planning to use his car to visit a friend. En route to his car he proceeded toward Fullerton and passed an occupied Chicago Transit Authority bus bench. He then realized that he had gone in the wrong direction and proceeded to Kedzie. At the corner of Kedzie and Fullerton he realized that the person he'd seen seated on the bench was following him. When he reached his car that person pointed a loaded .380 caliber pistol a foot from his head and said, "if I [Perry] ever came up behind him again he would blow my fucking head off." Perry persuaded the man to allow him to drive away in his car.

Perry then called an emergency operator after proceeding two blocks to a pay phone. He told the operator that a Hispanic male at the bus stop was wearing a green army jacket and had just pulled a gun on him. The operator told Perry to return to the bus stop to see whether that person had boarded a bus. Therefore Perry drove back to the original area and parked. When a westbound CTA bus arrived, he saw defendant board the bus. He described him as five-foot-five or five-foot-four and wearing a green fatigue jacket and said he was the only passenger picked up at the Kedzie and Fullerton stop.

The ensuing radio broadcast was heard by a squad car which Perry flagged down. He told the two officers that he had been threatened with a gun by a male Hispanic wearing a green army jacket and a cap and that the suspect had just boarded a westbound CTA bus. The officers caught up with the bus at Fullerton and Central Park Avenue and stopped it. One of the officers entered the bus through the rear door and spotted the defendant who fit the description provided by Perry. The other officer entered the front door of the bus and his radio went off accidentally, thus startling the defendant who then put his right hand into his field jacket pocket and started to retrieve his .380 caliber pistol. One of the officers saw defendant's shoulder coming up and the other officer grabbed his hand and told him not to move. The gun, containing six live rounds of ammunition, fell into defendant's jacket.

Defendant was then removed from the bus and taken into custody. He was brought to the Fourteenth District Police Station in Chicago. In the meantime, Perry had been brought to the station by other officers and waited in a nearby room to complete paperwork on the case. Perry spotted the defendant through an open door and told Officer Corona "That's him." Defendant was ultimately charged with violating 18 U.S.C. § 922(g)(1)[1] and was detained pending trial. New counsel, John T. Theis, was appointed counsel for defendant and filed motions to dismiss the indictment for lack of jurisdiction under *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and to suppress the evidence.

Judge Leinenweber denied the motion to dismiss the indictment but scheduled an evidentiary hearing on the motion to suppress for January 22, 1996, to be immediately followed by trial if the motion were denied.

On January 22 defendant arrived dressed in an unmarked orange prison jumpsuit. Mr. Theis said he was reluctant to have defendant appear in such an outfit before prospective jurors, and defendant's sister agreed to secure substitute clothes in time for trial.

Defendant told the court that he objected to going forward with the trial because he expected only an evidentiary hearing to suppress to be held on January 22. He also said that he might want different counsel. Thereupon Mr. Theis told the court that he had notified defendant that the case was set for trial on January 22 but defendant said that if he really expected trial to be held on that

---

**1.** 18 U.S.C. § 922(g)(1) makes it unlawful for a convicted felon to possess a firearm.

date, he would have had his own clothes brought to the courtroom.

Judge Leinenweber then said that he would proceed with the suppression hearing that morning, and the court stated that Mr. Theis was "a very good experienced veteran criminal defense lawyer" whom he would not replace, adding that defendant himself had sought Mr. Theis's appointment because he had previously represented defendant. The judge also added that he was ready to proceed with the suppression hearing. The defendant did not object to going forward in prison attire, and the court ultimately denied the motion to suppress, with the trial scheduled to begin an hour later.

When defendant reappeared for jury selection, he still wore the jumpsuit and Mr. Theis explained that the clothes defendant's sister had brought him were now too small. Defendant then pulled his sweatshirt over the jumpsuit, and he and Mr. Theis concluded that his present attire was "fine." Defendant did not object nor ask for other clothes, and Judge Leinenweber remarked that the sweatshirt would suffice to avoid any prejudice if defendant did not stand up.

On the first day of the trial several witnesses identified defendant as the individual in the "white T-shirt" or "white pull-over," and the orange jumpsuit was not mentioned. However, the next morning defendant appeared in court without a sweatshirt, but Mr. Theis said that defendant was willing to go ahead anyway without any comment by the court to the jury. The judge then said that the jumpsuit looked like an orange sport shirt if defendant just stayed seated. On the second day of the trial defendant was identified once as the individual "in the orange jumpsuit" and once as the individual "in the orange shirt." The jail character of his clothing was not mentioned.

When the government's case was completed, the court asked defendant whether he wished to testify and he said no because he had not been ready for trial. Defendant did not ask for a continuance, object to completing his trial in his present attire or renew his request for a different counsel, and he rested his case without presenting any witnesses.

The jury returned a guilty verdict. Before there was a ruling on Mr. Theis's motions for judgment of acquittal and new trial, Mr. Theis withdrew and substitute counsel was permitted to supplement the post-trial motions, including a challenge to the conviction because Arellano was wearing prison garb at trial.

Prior to sentencing, defendant's new counsel sought a competency evaluation. This resulted in defendant's examination at the Isaac Ray Mental Health Center in Chicago. He was found "fit to stand trial" although suffering from "several mental disorders." The examining physician recommended a hospital setting for treatment to "clarify the extent of feigned versus bona fide symptoms."

At sentencing, the district judge noted that defendant had a very bad past record, including prior sentences and confinements. The judge noted that the Guideline provision for defendant's case was 235–293 months and refused to grant a downward departure. The court sentenced defendant to 235 months' imprisonment, the low end of the Guidelines, and recommended that his sentence begin at Rochester, Minnesota, in order for defendant to receive mental treatment. A $5,000 fine was also imposed.

### Refusal to appoint new counsel

■ Defendant claims that the district court should have appointed new counsel and that he should therefore receive a new trial. However, as noted in the above statement of facts, defendant never made a motion for new counsel and the court noted that Mr. Theis was very experienced and had represented defendant in the state court and was thoroughly familiar with the facts of the case. Consequently, no change in counsel was required. *United States v. Hillsberg*, 812 F.2d 328, 333–334 (7th Cir.1987). Furthermore, defendant had not shown that actual prejudice resulted from the denial of the motion. *United States v. Turk*, 870 F.2d 1304, 1307 (7th Cir.1989).

Here defendant's request came on the eve of trial, and he had been previously accommodated by the appointment of new counsel of his choice, Mr. Theis, who had prepared

the case and was ready to proceed. No conflict was shown between defendant and Mr. Theis, nor did defendant express any dissatisfaction with his counsel's performance at the close of the evidence. Trial counsel vigorously defended Arellano, even though the evidence was overwhelming against him. A new trial with new counsel was simply not justified.

### Defendant's trial clothing does not compel a new trial

■ While the top of defendant's attire resembled an orange sport shirt, it was covered during the first full day of the trial by defendant's sweatshirt, and every effort had been made to secure his civilian clothes. On the second day of trial, when defendant abandoned his sweatshirt in favor of the orange jumpsuit, neither defendant nor counsel raised the clothing issue. The case is controlled by *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, where the accused appeared before the jury in prison attire. Here defendant was not compelled to be tried in jail attire, nor was any objection made. Consequently, the failure to make an objection to being tried in prison clothes was "sufficient to negate the presence of compulsion necessary to establish a constitutional violation." 425 U.S. at 513, 96 S.Ct. at 1697. This is especially so when, as here, "the practice of the trial judge was to permit any defendant who desired to be tried in civilian garb to be so attired" (Government Br. 29). Moreover, we have pointed out that trial in prison garb violates the constitution only if the defendant wants to be tried in civilian clothes. *Duarte v. United States*, 81 F.3d 75, 76 (7th Cir.1996). No such request was made.

### Downward departure was unwarranted

■ The district court read the report regarding defendant's mental health but concluded that this did not warrant a basis for downward departure. Instead, it concluded that defendant would benefit from medical treatment and that incarceration was necessary to protect the public. The judge concluded that the sentence he imposed was necessary to protect the public in view of defendant's violent career history. Since the district court exercised its discretion under appropriate review of defendant's past, we lack jurisdiction to review the sentencing decision. *United States v. Correa*, 995 F.2d 686, 687 (7th Cir.1993).

### Refusal to award defendant a reduction in offense level

■ Defendant submits that he should have been awarded a two-level reduction in the offense level for acceptance of responsibility. During the suppression hearing he falsely testified that he had never seen the victim or pointed a weapon at him. He also falsely told the district court that one of the two arresting officers told the other that defendant was not the one they were looking for because his gun was not recently fired. Instead of accepting responsibility, his defense was that the crime did not happen and that there was no evidence to show that he possessed a firearm at the bus stop or anywhere else. None of his statements warranted the requested two-level reduction in offense level.

### Erroneous fine order

■ The district court erroneously gave the Probation Office the discretion to determine the frequency and timing of installment payments on the $5,000 fine imposed. Thus the judgment and conviction order stated that the defendant was to pay the fine in installments "to be set by the Probation Department." However, such an order cannot be delegated to administrative staff. The district court itself must set the payment schedule for fine and restitution. *United States v. Yahne*, 64 F.3d 1091 (7th Cir.1995).

Defendant's conviction and sentence are affirmed, but the fine order is vacated and the case is remanded to the district court for scheduling of payments on the fine.