951 F.2d 364
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel WALLER, Defendant-Appellant.
 No. 91-30041.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Nov. 4, 1991.
Decided Dec. 19, 1991.
 
 Before TANG, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Samuel Waller was found guilty of structuring approximately $500,000 in currency deposits with various banks in Oregon, in individual deposit amounts of less than $10,000, so as to avoid federal currency transaction report (CTR) requirements. 31 U.S.C. §§ 5313(a), 5322, and 5324(3). Waller appeals the district court's denial of his motion for a new trial. He argues that Judge Redden should have recused himself after reviewing an FBI report (the Wirth Memorandum) appended to co-defendant Gentry McKinney's presentence report, which contained information about drug trafficking that implicated Waller as well as McKinney. Waller also claims that his waiver of a jury trial was not "knowing and intelligent" because he did not know the judge was familiar with the Wirth Memorandum. Waller additionally argues that his rights under Miranda v. Arizona, 384 U.S. 436, 478-79 (1966), were violated when a prosecution witness testified about Waller's demeanor during a custodial interrogation. Finally, Waller contends that U.S.S.G. § 2S1.3(a)(1)(C)[1] is an unconstitutionally vague guideline and, in any event, was applied erroneously in his case. We affirm.
 
 
 3
 * The denial of a motion for a new trial is reviewed for abuse of discretion, United States v. Steel, 759 F.2d 706, 713 (9th Cir.1985), as is Judge Redden's refusal to recuse himself. United States v. Monaco, 852 F.2d 1143, 1147 (9th Cir.1988), cert. denied, 488 U.S. 1040 (1989). Waller argues that Judge Redden's review of the FBI report during the McKinney sentencing process compromised the appearance of impartiality during Waller's subsequent bench trial. Information obtained by a judge through judicial duties in relation to one co-defendant, however, cannot serve to disqualify that judge from the subsequent trial of another co-defendant. See id.; United States v. Winston, 613 F.2d 221, 223 (9th Cir.1980). Waller relies on a First Circuit opinion, United States v. Chantal, 902 F.2d 1018 (1st Cir.1990), to support his contention that an impermissible appearance of judicial bias can originate even when a judge is performing judicial duties. We have not followed the First Circuit's position on this issue.
 
 
 4
 Our adherence to Monaco is supported by the fact that, as Judge Redden noted in his written order denying the motion for a new trial, he read the FBI report more than five months prior to Waller's bench trial and had by that time already forgotten its significance and specific allegations. Furthermore, judges are presumed to have ignored inadmissible evidence when deciding a case. Harris v. Rivera, 454 U.S. 339, 346 (1981) (per curiam). This presumption applies with equal force when a judge reviews a report during the sentencing process in one case that would be inadmissible in another case over which he subsequently presides. Finally, because all parties agreed that evidence in McKinney's trial could be considered in Waller's trial, and were aware that Judge Redden would have access to all information proffered in the McKinney proceedings, the Wirth Memorandum submitted in connection with McKinney's sentence was not an ex parte communication that the judge should not have seen. Cf. United States v. Van Griffin, 874 F.2d 634, 637 (9th Cir.1989) (magistrate had police report about defendant he should not have had).
 
 
 5
 Given these facts, we see no reasonable grounds for questioning Judge Redden's impartiality because of bias or prejudice. See United States v. Conforte, 624 F.2d 869, 881 (9th Cir.), cert. denied, 449 U.S. 1012 (1980). Accordingly, Judge Redden did not abuse his discretion by declining to recuse himself, or by denying the motion for new trial.
 
 II
 
 6
 Waller's other ground for seeking a new trial is based upon a claim that his jury waiver was invalid. Waller waived his right to a jury on two occasions: once in June 1989 when the parties stipulated that Waller's bench trial would follow McKinney's jury trial, and that evidence in the McKinney trial could be considered in Waller's; and again in April 1990 immediately before the start of Waller's trial. He argues that the judge failed to make the kind of disclosure required for an intelligent waiver, and that the disclosure fell short of what Conforte condoned.
 
 
 7
 No problem arises from the original waiver because the Wirth Memorandum had not yet surfaced. So far as the second waiver is concerned, it was well within Judge Redden's discretion to find that there was no information of which he was then aware that should have been disclosed. See Conforte, 624 F.2d at 881-82. Waller knew that Judge Redden would know whatever came up during the McKinney trial. Having attended that trial, Waller knew that the government had proffered evidence that a narcotics sniffing dog had reacted positively to currency deposited by McKinney. Even though that evidence was excluded from McKinney's jury trial, Judge Redden obviously knew about it, and Waller knew Judge Redden knew about it. Similarly, Waller knew that the government's theory was that drug trafficking was the source of the funds he and McKinney deposited. He had been asked about drug trafficking shortly after his arrest, and during discovery the government provided Waller with alleged drug records found in his car. These records were the subject of a motion in limine and he therefore knew that Judge Redden was aware of the government's belief that Waller was involved in dealing drugs. While the Wirth Memorandum may have been more detailed, even had Judge Redden recalled it, it did not refer to any subject not already touched upon. Waller, therefore, was sufficiently informed of Judge Redden's knowledge of his involvement with drugs that his waiver was knowing and intelligent.
 
 
 8
 Under the circumstances of this case, it was unnecessary for the trial judge to go further, as Waller urges he should have, and specifically warn him that a juror with Judge Redden's knowledge would be disqualified. We conclude the waiver was valid, and that the district court did not abuse its discretion in denying Waller's motion for a new trial.
 
 III
 
 9
 Whether Agent Bruckner's testimony violated Waller's Fifth Amendment Miranda rights presents a question of law reviewed de novo. See United States v. Schuler, 813 F.2d 978, 980 (9th Cir.1987). Waller claims Bruckner's testimony violates the rule that the prosecution may not comment on a defendant's silence after he has been informed of his right to remain silent. See Wainwright v. Greenfield, 474 U.S. 284, 290-91 (1986); Doyle v. Ohio, 426 U.S. 610, 617-18 (1976). Unlike those two cases, however, Waller was not, in fact, silent after receiving his Miranda warnings. He responded to Agent Bruckner's custodial questioning. Waller's Fifth Amendment right to remain silent, therefore, was not violated. Cf. Anderson v. Charles, 447 U.S. 404, 408-09 (1980).
 
 IV
 
 10
 Waller contends that U.S.S.G. § 2S1.3(a)(1)(C) is unconstitutionally vague because it provides a sentence enhancement for individuals who "reasonably should have believed that the funds were criminally derived property." Assuming that sentencing guidelines can be challenged on their face as unconstitutionally vague, we do not think § 2S1.3(a)(1)(C) violates due process. In United States v. Helmy, No. 89-10659, slip op. 14657, 14665-66 (9th Cir. Oct. 28, 1991), we indicated that a guideline satisfies due process if it "provide[s] explicit standards for those who apply it[,] to prevent arbitrary and discriminatory enforcement." Id. at 14666 (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982)).
 
 
 11
 The reasonable person standard found in § 2S1.3(a)(1)(C) means that judges may not apply that section's upward enhancement arbitrarily and discriminatorily--they must first make an objective determination that the defendant should have known the property was criminally derived property. Because judges are capable of making a reasoned judgment that an individual in a particular case should know when a horde of cash is criminally derived property, we conclude that § 2S1.3(a)(1)(C) does not authorize arbitrary sentence enhancements, and thus does not offend due process.
 
 
 12
 Finally, Waller contends there is insufficient evidence in the record to support the conclusion that he reasonably should have known that the cash he deposited was criminally derived property. Waller's claim fails. First, the sheer volume of cash he handled in a three-month period undoubtedly would have led a reasonable person to consider it criminally derived property. Second, testimony from Agent Bruckner suggested that Waller was aware the money had been obtained from drug sales. Finally, Waller's counsel once again brought the drug allegations raised in the Wirth Memorandum to the district court's attention prior to Waller's sentencing.[2] That memorandum also suggests Waller knew the cash had been obtained through drug trafficking.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Waller was sentenced in January 1991 and thus the district court applied U.S.S.G. § 2S1.3(a)(1)(C) as it appears in the November 1990 Guidelines Manual
 
 
 [2]
 Waller's counsel wrote a letter to Judge Redden prior to his sentencing that attempted to rebut the Wirth Memorandum's allegations