VINCENT EDWARD TURNER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 27411

July 16, 1998                              962 P.2d 1223

*Lee Elizabeth McMahon,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Chris Owens,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, YOUNG, J.:

Edward Earl Walker, a.k.a. Earl Cage, ("Walker"), a cocaine dealer, stored drugs at the home of his girlfriend, Marnie Hickman ("Hickman"). Hickman had at least a friendly relationship with appellant Vincent Edward Turner ("Turner"). On February 2, 1992, Turner, Darryl Fuller ("Fuller"), and Armond Brown ("Brown") formed a plan to rob Walker of cocaine. Turner was to gain entry to the apartment, then leave the door unlocked. The other two were to enter and execute the robbery. Turner was not to play any further role in the robbery so that Hickman would not suspect his involvement.

The three went to Hickman's apartment that evening. Hickman allowed Turner inside the apartment. Turner left the door unlocked behind him. Fuller and Brown then entered the apartment and searched for cocaine. Brown aimed a handgun at Hickman and demanded to know where Walker kept his stash of cocaine. Fuller discovered a large amount of cocaine. Fuller and Brown then determined that because Hickman had seen them, they were obliged to kill her. Brown ordered Hickman to lie on the floor. He pulled the trigger, but his gun jammed. Fuller handed Brown his handgun. Hickman begged for her life and promised to tell Brown where Walker kept his remaining narcotics. Brown then shot Hickman to death. The three then took Walker's cocaine to a hotel and divided it amongst themselves.

On April 21, 1992, Turner contacted the North Las Vegas Police Department and ultimately confessed his involvement in the murder. This confession matched facts which the police had previously learned from Fuller. Turner was subsequently arrested. On December 23, 1992, Turner, Fuller, and Brown were each charged by information with conspiracy to commit robbery, robbery with use of a deadly weapon, attempted robbery with use of a deadly weapon, burglary, and murder with use of a deadly weapon. Brown was subsequently killed, likely as revenge for the Hickman murder.

On March 3, 1994, Fuller filed a motion for disclosure of any possible basis for judicial disqualification. On June 6, 1994, Turner joined this motion. On August 1, 1994, the district court held a hearing on this and certain other motions. At this hearing, the following exchange occurred:

> THE COURT: Apparently I argued a sentencing one time against Mr. Turner and I also appeared for the State of

Nevada at the initial arraignment as to both defendants. Was there a problem?

[Fuller's counsel]: Your honor, on behalf of both defendants, we have no problem with your previous participation and would waive any defects.

[Turner's counsel]: Judge, I discussed the matter with my client and would waive any defects in the case.

. . . .

THE COURT: And, Mr. Turner, do you have any problem with me being the judge hearing your case and I previously worked in the D.A.'s case and I not only appeared for the State of Nevada at previous arraignments but I previously had argued for a sentence for you or against you I should say.

[Turner]: No, sir.

However, at the August 5, 1994 calendar call, Turner stated that he had concerns about the district court's fairness, given the judge's prior activity as a prosecutor in both the present case and a prior case. The district court vacated the approaching trial date and asked counsel to brief the issue of whether recusal was required. On this same date, Fuller pleaded guilty pursuant to a plea agreement.

On August 24, 1994, Turner filed a motion to recuse the district court judge. On September 8, 1994, the district court denied this motion, but did not explain its reasons for doing so.

On January 10, 1995, Turner filed a proper person motion to dismiss his counsel. Turner argued that his attorney failed to investigate certain information which would have shown that Turner did not knowingly and voluntarily waive his *Miranda* rights before confessing. In addition, Turner argued that his counsel should be dismissed because Turner had filed a federal civil rights complaint against his counsel for malpractice, and therefore, Turner had a conflict of interest with his attorney. On January 24, 1995, the district court denied this motion.

The jury trial began on February 28, 1995. When the district court instructed the jury on the charges of robbery and attempted robbery, it mistakenly stated that ''[i]f one count of an information charges a defendant with committing an offense and another count charges a lesser included offense, the defendant may be convicted of both counts.'' The jury returned a verdict of guilty on all charges, including both robbery and attempted robbery. At the April 6, 1995 sentencing hearing, the court dismissed the attempted robbery charge and let stand the guilty verdict for robbery with use of a deadly weapon.

On April 24, 1995, the district court filed a judgment of

conviction. Turner was sentenced to two consecutive life senten-
ces with the possibility of parole for the murder, six years in
prison for the conspiracy, fifteen years for the robbery with an
additional fifteen years as a robbery sentence enhancement, and
ten years for the burglary. The conspiracy and burglary sentences
were to run consecutively to each other and to the murder
sentence. The robbery sentence was to run concurrently with all
the other prison time. On May 22, 1995, Turner filed his notice
of appeal.

## DISCUSSION

First, Turner argues that his conviction should be reversed
because the district court judge should have been disqualified
from the case on the grounds of implied bias. We agree.

Canon 3(E) of the Nevada Code of Judicial Conduct
("NCJC") provides, in relevant part:

> (1) A judge *shall* disqualify himself or herself in a pro-
> ceeding in which the judge's impartiality might reasonably
> be questioned, including but not limited to instances where:
>
> . . . .
>
> (b) the judge served as a lawyer in the matter in contro-
> versy . . . .

(Emphasis added.)

A similar provision is codified in NRS 1.230:

> 2. A judge *shall not* act as such in an action or proceed-
> ing when implied bias exists in any of the following respects:
>
> . . . .
>
> (c) When he has been attorney or counsel for either of the
> parties in the particular action or proceeding before the
> court.

(Emphasis added.)

We conclude that the plain language of these statutes demon-
strates that recusal is mandatory in cases where the district court
judge, prior to taking the bench, acted as an attorney in the case.

In the present case, the district court judge had, while
employed by the district attorney's office, appeared on behalf of
the State at two of Turner's pre-trial hearings. Therefore, we
conclude that the district court judge was clearly subject to
disqualification.

However, a party may waive his right to have a judge disquali-
fied. Canon 3(F) of the NCJC provides:

A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

At a hearing on August 1, 1994, the district court judge disclosed his previous involvement in the case to the parties, then called a thirty-five minute recess to allow the parties and their attorneys to determine whether to waive disqualification. Following this recess, the district court asked Turner whether he had any objection to the judge based on his previous involvement in this case. Turner responded that he did not.

We conclude that this colloquy demonstrates that Turner waived disqualification. The record shows that the district court judge disclosed the basis for disqualification and then allowed the parties to determine how to proceed. The parties agreed on the record the judge need not be disqualified. Therefore, pursuant to Canon 3(F), Turner initially waived his right to disqualification.

However, at the August 5, 1994 calendar call, Turner attempted to withdraw this waiver. In response, the district court judge vacated the trial date and asked the parties to submit briefs addressing the issue of whether he should disqualify himself. We conclude that by so doing, the court acknowledged Turner's withdrawal of waiver.

NRS 1.235 delineates the procedure for disqualifying judges. This statute provides, in relevant part:

1. Any party to an action or proceeding pending in any court other than the supreme court, who seeks to disqualify a judge for actual or implied bias or prejudice must file an affidavit specifying the facts upon which the disqualification is sought. The affidavit of a party represented by an attorney must be accompanied by a certificate of the attorney of record that the affidavit is filed in good faith and not interposed for delay. . . .

. . . .

5. The judge against whom an affidavit alleging bias or prejudice is filed shall proceed no further with the matter and shall:

(a) Immediately transfer the case to another department of the court . . . .

(b) . . . The question of the judge's disqualification must thereupon be heard and determined by another judge. . . .

In this case, Turner submitted only a document styled "Motion to Recuse Judge." This motion was accompanied by court transcripts that were sufficient to show that the district court judge should have recused himself on the grounds of implied bias pursuant to NRS 1.230. However, no affidavit or certificate of good faith was filed as required by NRS 1.235(1).

Despite these procedural errors, we conclude that the district court judge erred by failing to recuse himself. Although Turner's motion was procedurally flawed, he submitted that motion in response to the judge's request that the parties submit briefs on the issue. The memorandum of points and authorities which Turner submitted in support of his motion adequately set forth the applicable law. The facts giving rise to disqualification are not disputed; the district court judge acknowledged from the bench that he had made appearances as an assistant district attorney in the case. NRS 1.230 and Canon 3(E) explicitly provide that a judge who has served as an attorney in a case *shall* recuse himself. Therefore, we conclude that the judge erred by failing to recuse himself.

We further conclude that this error mandates automatic reversal. The Preamble to the NCJC states: "[J]udges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system." The United States Supreme Court has held that 28 U.S.C. § 455(a), a statute similar to Canon 3(E), is designed to "avoid even the appearance of partiality." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1987). We conclude that it would be inconsistent with these goals to apply a harmless error analysis to a judge's improper failure to recuse himself. Therefore, we conclude that such failure mandates automatic reversal.

Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.[1]

SPRINGER, C. J., and SHEARING, J., concur.

---

[1]Turner argues that his Sixth Amendment right to counsel was violated because of a conflict of interest on the part of his trial counsel. Turner also

MAUPIN, J., with whom ROSE, J. agrees, concurring in part and dissenting in part:

I agree with the majority that the trial judge erred by failing to recuse himself upon Turner's renewed motion for disqualification. However, contrary to the majority's position, I believe that his failure to recuse himself created merely an appearance of bias which does not mandate reversal but is susceptible to a harmless error analysis. *See* NRS 178.598 (any error not affecting substantial rights shall be deemed harmless).

NRS 1.230 provides that a district court judge may be disqualified on the grounds of either actual or implied bias. It is well settled that where a district judge errs by failing to recuse himself on the grounds of actual bias, reversal is mandatory. *See* NRS 1.230(1). However, I submit that where the bias was merely implied, *see* NRS 1.230(2)(c), as it indisputedly was in this case, reversal is not mandatory and a harmless error analysis is appropriate. *See* United States v. Van Griffin, 874 F.2d 634, 637 (9th Cir. 1989) (in case involving violation of 28 U.S.C. § 455, which defines the circumstances under which a federal judge must recuse himself, court held that harmless error analysis is appropriate if violation created merely appearance of bias rather than actual bias).

Applying this harmless error analysis, I conclude that Judge Chairez's failure to recuse constitutes harmless error because (1) his prior involvement in the case, while a Clark County district attorney, was nominal, (2) Turner did not receive the maximum sentences, and (3) the evidence of guilt was overwhelming in that Turner confessed to the murder of Hickman. Accordingly, I submit that the application of a harmless error analysis, when the failure to recuse creates merely an appearance of bias, is not inconsistent with the broader goals of judicial impartiality.

---

argues that the district court erred by dismissing the attempted robbery charge and convicting him of robbery. In addition, Turner submitted a proper person supplemental brief in which he argued the trial court erred by failing to adequately consider whether Turner was competent to stand trial. Because we have determined that Turner's conviction must be reversed on other grounds, we will not address these issues.