**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

GABRIEL MIRABAL,

*Defendant-Appellant*.

No. 22-50217

D.C. No.
5:18-cr-00335-
MWF-2

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted March 5, 2024
Pasadena, California

Filed April 16, 2024

Before: Holly A. Thomas and Roopali H. Desai, Circuit
Judges, and James Alan Soto,[*] District Judge.

Opinion by Judge H.A. Thomas

---

[*] The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated Gabriel Mirabal's conviction by jury trial for two counts of assaulting a federal officer resulting in bodily injury, in violation of 18 U.S.C. § 111, and remanded for further proceedings.

The panel held the district court abused its discretion in excluding the sworn statement of a government attorney as hearsay at Mirabal's trial because, in a criminal case, the sworn statement of a government attorney in a plea agreement or sentencing memorandum is a party admission, excluded from the definition of hearsay under Federal Rule of Evidence 801(d)(2). The panel further held that the error was not harmless.

### COUNSEL

Alix L. McKenna (argued) and Jena A. MacCabe, Assistant United States Attorneys; Bram M. Alden, Assistant United States Attorney, Chief, Criminal Appeals Section; E. Martin Estrada, United States Attorney; United States Department of Justice, Office of the United States Attorney, Los Angeles, California; for Plaintiff-Appellee.

Elizabeth Richardson-Royer (argued), Law Office of Elizabeth Richardson-Royer, San Francisco, California, for Defendant-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# OPINION

H.A. THOMAS, Circuit Judge:

Federal Rule of Evidence 801(d)(2) excludes from the definition of hearsay several categories of statements "offered against an opposing party."[1] Thirty-five years ago, in *United States v. Van Griffin*, 874 F.2d 634, 635, 638 (9th Cir. 1989), we held that in a criminal prosecution for driving under the influence of alcohol on federal land, the defendant could introduce a United States Department of Transportation manual on sobriety testing under Rule 801(d)(2). We reasoned that the document had been written by "the relevant and competent section of the government," and was thus the admissible statement of the government as a party opponent. *Id.* at 638 (citing Fed. R. Evid. 801(d)(2)(D)).

Today, we examine the application of *Van Griffin* and Rule 801(d)(2) in the context of government attorney statements. Doing so, we hold that, in a criminal case, the sworn statement of a government attorney in a plea agreement or sentencing memorandum is a party admission, excluded from the definition of hearsay under Rule 801(d)(2).

## I.

## A.

Gabriel Mirabal is a prisoner at a federal correctional institution in Victorville, California. On June 17, 2022,

---

[1] These exclusions from hearsay are commonly described as the exclusions for party admissions. *See, e.g.*, *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981).

Mirabal was convicted of two counts of assaulting a federal officer resulting in bodily injury under 18 U.S.C. § 111. He now appeals, arguing in part that the district court abused its discretion when it excluded the sworn statement of a government attorney as hearsay at his trial. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Because we conclude that the statement was improperly excluded, and that this exclusion was not harmless, we vacate Mirabal's conviction and remand for further proceedings.

## B.

On August 19, 2017, Mirabal and a fellow inmate, Erik Rojo, passed through metal detectors while returning to their housing units after lunch. One of them wore a white shirt, and the other wore a brown shirt. The white-shirted individual traversed the metal detectors without incident, but the brown-shirted individual triggered an alarm. Two correctional officers, Brian Moreno and Anthony Guerrero, were stationed at the metal detectors. After the brown-shirted individual triggered the alarm on a second passthrough, Moreno initiated a pat-down search.

The parties dispute exactly what happened next. They agree that the brown-shirted individual and Moreno entered a verbal back-and-forth, and that the former threw the first punch. The government claims that the blow was unprovoked; Mirabal, however, asserts that the brown-shirted individual threw the punch in self-defense after Moreno first quickly raised his arm.

After the fight broke out between the brown-shirted individual and Moreno, Guerrero rushed to assist his fellow officer. The white-shirted individual—who by now was already some distance beyond the metal detectors—turned

back to join the fray, punching Moreno in the back of the head and knocking him unconscious, before attacking Guerrero. Other officers eventually arrived and stabilized the situation, but not before Moreno and Guerrero both suffered physical injuries.

On December 11, 2018, a grand jury indicted both Rojo and Mirabal on two counts of assaulting a federal officer resulting in bodily injury and the aiding and abetting thereof, with one count for the assault on Moreno and the second for the assault on Guerrero. Mirabal proceeded to trial.

## C.

To fully explain Mirabal's trial, a detour is necessary to discuss the proceedings in Rojo's case. On August 15, 2019, Rojo and the government entered into a plea agreement in which Rojo pleaded guilty to one count of assaulting a federal officer resulting in bodily injury. The plea agreement's factual basis identified Rojo as the individual in the white shirt who passed through the metal detectors without incident, and Mirabal as the individual in the brown shirt who set off the alarm, was searched by Moreno, and threw the first punch. The United States Attorney's Office (USAO) for the Central District of California agreed to and accepted the plea agreement, and a Special Assistant United States Attorney signed it.

The district court held Rojo's change of plea hearing roughly one month later. The district court summarized the factual basis of the plea agreement as describing a "scuffle or altercation between Mirabal and the two correctional officers" in which Rojo subsequently "got involved." Rojo agreed to this description of events, and the government raised no objection to it. For the next two months, the government showed no signs of deviating from this

narrative. Indeed, on November 25, 2019, the government reiterated this factual basis in its sentencing position, deeming Mirabal the brown-shirted individual who got into an altercation with the correctional officers, and Rojo the white-shirted individual who ran back after the fact to get involved.

The following day, however, the government filed a notice of errata withdrawing its sentencing position. And on December 4, 2019, the government filed an amended plea agreement, which removed all references to Mirabal from the factual basis.[2]

## II.

We have discussed Rojo's proceedings at length, and we repeatedly employ the phrases "the brown-shirted individual" and "the white-shirted individual," because a key issue at Mirabal's trial concerned what color shirt he wore on the day of the incident. At Mirabal's trial, the government consistently portrayed him as the person in the white shirt, while Mirabal consistently maintained that he was clad in brown.

That the jury conclude Mirabal was wearing brown was key to his defense, which was predicated upon the theory that he acted to protect himself from perceived aggression by Moreno during the search. This self-defense theory was, practically speaking, unavailable to the white-shirted individual, who ran back from across the courtyard to join the fight after it started. To support his theory, Mirabal

---

[2] As do the parties and the district court, we refer collectively to the statements contained in the factual basis in Rojo's original plea agreement, and those same statements in the government's first sentencing memorandum, as Rojo's original factual basis.

sought to introduce, as the statement of a party opponent, Rojo's original factual basis as evidence that the government had previously taken the position that Mirabal wore the brown shirt.

The government filed a motion in limine to exclude the original factual basis under Federal Rules of Evidence 401, 403, and 802. The government argued, in part, that the original factual basis was irrelevant because, "[a]s a general matter, the fact of a plea or conviction of a non-testifying co-defendant is inadmissible"; the original factual basis was merely the mistaken "personal opinion" of the prosecutor at the time; and the original factual basis was inoperative and no longer had any "legal significance." The government also maintained that the original factual basis constituted hearsay because it was "an out-of-court admission by Rojo," who was not testifying at Mirabal's trial.

The district court granted the government's motion, reasoning that the original factual basis constituted inadmissible hearsay. The court held that Rule 801(d)(1)(A)'s hearsay exclusion for prior inconsistent statements did not apply to the original factual basis because Rojo was not called to testify at Mirabal's trial. And it reasoned that Rule 801(d)(2)'s hearsay exclusion for an admission of a party opponent did not apply to the "opinion" of a prosecutor.

Who wore which shirt was a significant focus at Mirabal's trial, with the parties eliciting conflicting evidence on the matter. The government presented surveillance footage and photographic evidence and called multiple correctional officers, including Moreno and Guerrero, to testify about the incident. Moreno and Guerrero each testified that Rojo wore the brown shirt. But other officers—

including the one who handcuffed the brown-shirted individual, and another who escorted the brown-shirted individual to a restricted housing unit after the fight— testified that Mirabal wore the brown shirt. In closing arguments, the government suggested, for the first and only time, that the jury could convict Mirabal regardless of whether he wore the brown or white shirt. The district court instructed the jury on self-defense.

The jury convicted Mirabal on both counts of assault resulting in bodily injury against Moreno and Guerrero. Mirabal was ultimately sentenced to 57 months' imprisonment and ordered to pay restitution in the amount of $8,983.39 for Moreno and Guerrero's lost wages.

### III.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Mikhel*, 889 F.3d 1003, 1035 (9th Cir. 2018). "[A] district court abuses its discretion when it makes an error of law." *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc).

### IV.

### A.

Mirabal argues that the district court abused its discretion when it excluded Rojo's original factual basis as hearsay. We agree and, for the reasons described below, vacate Mirabal's conviction and remand for further proceedings.

Under Federal Rule of Evidence 801(d)(2), a statement is not hearsay if it is offered against an opposing party and if the statement

(A) was made by the party in an individual or representative capacity;

**(B)** is one the party manifested that it adopted or believed to be true;

**(C)** was made by a person whom the party authorized to make a statement on the subject;

**(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

**(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Rojo's original factual basis plainly falls within Rule 801(d)(2)(A)–(D). It therefore should not have been excluded on the basis that it constitutes hearsay.

Our decision in *United States v. Van Griffin*, 874 F.2d 634 (9th Cir. 1989), supports this conclusion. There, the defendant, charged with driving under the influence on federal land, sought to introduce at his trial a Department of Transportation pamphlet regarding the procedures to be used in field sobriety tests, including a test for nystagmus. The district court excluded the pamphlet as hearsay. Although we found that the exclusion of the pamphlet was harmless, we held that it was nevertheless in error. We explained that under Rule 801(d)(2)(D), the pamphlet "could have been introduced by the defendant . . . to show the measures that are necessary to be taken in order to have a reliable test for nystagmus." *Id.* at 638. Although we explicitly refrained from holding that "every publication of every branch of government of the United States can be treated as a party admission by the United States," we held that the pamphlet had been developed by the "relevant and competent section of the government," one "charged with the development of

rules for highway safety." *Id.* We therefore found the pamphlet "was an admissible party admission." *Id.*

There is no question that, as our decision in *Van Griffin* implies, "the Federal Rules clearly contemplate that the federal government is a party-opponent of the defendant in criminal cases." *United States v. Morgan*, 581 F.2d 933, 937 n.10 (D.C. Cir. 1978) (citing Fed. R. Evid. 803(8)). Nor can it be seriously disputed that, as the Department of Transportation in *Van Griffin* was the "relevant and competent section of the government" when it came to highway safety, so is the Department of Justice with respect to criminal prosecutions. The logic of our decision in *Van Griffin* comfortably encompasses formal, signed statements made by a government attorney in filings before a court, such as plea agreements and sentencing memoranda. We therefore hold that when a criminal defendant seeks to introduce such statements at trial, they fall within Rule 801(d)(2)'s hearsay exclusion for statements made by an opposing party.

## B.

The government contends that allowing the introduction of Rojo's original factual basis is to mistake the mere "opinions" of a government attorney for a statement of the kind admissible as a hearsay exclusion under Rule 801(d). This argument is unpersuasive.

As the D.C. Circuit stated in *Morgan*, "when the government authorizes its agent to present his sworn assurances to a judicial officer[,] the statements of fact or belief in the officer's affidavit represent the position of the government itself, not merely the views of its agent." 581 F.2d at 937 n.10. Similarly, here, the government's theory of the case was not the mere errant remark or personal

viewpoint of a government attorney. Memorialized in writing and set forth multiple times before the district court in sentencing memoranda and plea agreements, Rojo's original factual basis constituted the official position of the United States regarding what happened during the August 19 altercation. The factual basis plainly states that "Defendant [Rojo] and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement." The factual basis was signed by both the Special Assistant United States Attorney and by Rojo himself.

It is true that the government subsequently filed an amended plea agreement. But that amendment does not change the fact that the government had once adopted the original factual basis. Nor, as the government contends, does Rojo's status as a co-signatory to that factual basis change the fact that the government's independent statements fall within the party admission hearsay exclusion. Both Rojo and the government were declarants within the meaning of Rule 801(b). No issue of nested hearsay presents itself because the factual basis reflected the government's understanding of the case based upon the entirety of its investigation at the time, not merely a parroting of Rojo's statements. *Cf. Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986) (nested hearsay occurs when one declarant testifies as to another declarant's out-of-court statement).

## C.

We do not determine how far Rule 801(d)(2) extends to other government employees. And exactly which departments of the federal government are a party-opponent will depend on a case's factual circumstances. Today, we

hold only that "in criminal cases, the Justice Department certainly should be considered" a party-opponent of criminal defendants. *United States v. Kattar*, 840 F.2d 118, 130 (1st Cir. 1988) (citation omitted); *see also Morgan*, 581 F.2d at 937 n.10; *United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004) ("[T]he government's attorneys can bind the government with their in-court statements.").[3] Rule 801(d)(2)'s hearsay exclusions, in turn, apply to government attorneys' statements in plea agreements and sentencing memoranda.[4]

## D.

"We may only conclude that an error was harmless if it is 'more probable than not that the erroneous admission of the evidence did not affect the jury's verdict.'" *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1017 (9th Cir. 1995) (quoting *United States v. Hill*, 953 F.2d 452, 458 (9th Cir.

---

[3] *But see United States v. Zizzo*, 120 F.3d 1338, 1351–52 & n.4 (7th Cir. 1997) (declining "to apply Rule 801(d)(2) to statements made by government employees in criminal cases," based upon "the common law principle that no individual should be able to bind the sovereign," but ultimately upholding the exclusion of evidence at issue under Rule 403). We reject *Zizzo*'s dicta as unpersuasive when applied to government attorneys. It is indisputable that government attorneys can and do bind the United States because the United States "can act only through its officers and agents" when conducting a criminal prosecution. *Wellingham v. Morgan*, 395 U.S. 402, 406 (1969). And, in any event, applying Rule 801(d)(2) does not "bind the sovereign" because it merely allows a party to admit in-court statements that government agents previously made; it does not mandate a course of conduct, forbid any action, or even require the government to continue to stand by those statements.

[4] In so holding, we of course do not suggest that trial courts should refrain from analyzing such statements under Rule 403, or that they should admit such statements when they are irrelevant.

1991)). Applying this principle here requires vacating Mirabal's conviction.

Had Mirabal had the opportunity to present Rojo's original factual basis, his argument that he wore the brown shirt would have had considerably more support. As the district court noted, "who was who c[ould] make a difference here," because the brown-shirted individual had a stronger self-defense claim than did the white-shirted individual, who joined the altercation after it had begun. The focus of the government's evidence at trial was demonstrating that Rojo, not Mirabal, wore the brown shirt. Mirabal elicited testimony suggesting that Moreno raised his arm shortly before the first punch was thrown and that he gave inconsistent reasons for doing so. Although the jury theoretically could have convicted Mirabal regardless of whether he wore the brown or white shirt, the government pressed that point only once, in its closing argument. And although the government presented to the district court a facially innocuous explanation for changing the original factual basis—namely that its previous prosecutor was simply mistaken—we cannot conclude based on our review of the record that the jury would have credited its explanation.

## V.

Rojo's original factual basis, containing statements of the USAO, was a party admission under Rule 801(d)(2). The government has not met its burden of showing that the exclusion of this basis did not affect the outcome of Mirabal's trial. Mirabal's conviction is therefore

**VACATED** and this matter is **REMANDED** for further proceedings.[5]

---

[5] Because we vacate Mirabal's conviction and remand for further proceedings, we do not address at length his remaining contentions on appeal, noting only that we perceive no due process violations that would have warranted the granting of his motion for a new trial, nor any abuse of discretion related to the exclusion of evidence of Moreno's Three Percenters tattoo. While we do not presume the course of any further proceedings, we also remind the parties that "[a]ny dispute as to the proper amount or type of restitution" raised at sentencing must be "resolved by the court by the preponderance of the evidence," with the government bearing the burden of "demonstrating the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e); *see also United States v. Waknine*, 543 F.3d 546, 556–57 (9th Cir. 2008) (holding that the government does not meet its burden when it relies only on conclusory loss summaries).