**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50110 |
| *Plaintiff-Appellee*, | D.C. No. 3:19-mj-24522-LL-TWR-1 |
| v. | |
| ULISES ROMEO LUCAS-HERNANDEZ, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted April 8, 2024
Pasadena, California

Filed May 23, 2024

Before: Marsha S. Berzon and Salvador Mendoza, Jr.,
Circuit Judges, and Susan R. Bolton,[*] District Judge.

Opinion by Judge Bolton

[*] The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

## Criminal Law

The panel affirmed the district court's ruling upholding Romeo Lucas-Hernandez's misdemeanor conviction for attempted illegal entry under 8 U.S.C. § 1325(a)(1), following a bench trial before a magistrate judge, in a case in which Lucas-Hernandez asserted that the magistrate judge erred by admitting a border patrol agent's Spanish-to-English translation of Lucas-Hernandez's field statements.

In *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991), this court considered the issue of how to treat opposing-party statements made through an interpreter when the testifying witness was unable to understand the original language of the declarant and can testify only to the words of the interpreter. *Nazemian* identified four factors to aid in determining on a case-by-case basis whether an interpreter's statements should be attributed to the speaker: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated.

Lucas-Hernandez argued that the agent's testimony of Lucas-Hernandez's field statements was hearsay and fell outside the hearsay exclusion in Federal Rule of Evidence 801(d)(2) because the agent was not a "mere language conduit" under *Nazemian*, 948 F.2d 522 (9th Cir. 1991); and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the agent employed specialized knowledge as a Spanish interpreter but was not qualified to give expert testimony. The district court found that *Nazemian* did not apply, so the agent's testimony as to Lucas-Hernandez's field statements was not hearsay; the agent laid a sufficient foundation that he understood Lucas-Hernandez's statements; and any error in admitting Lucas-Hernandez's statements was harmless.

This court had thus far applied the *Nazemian* factors only where the witness testified to a third-party interpreter's translation of the declarant's statement. The panel held here that *Nazemian*'s four-factor analysis applies to the statements of a party opponent that are translated by the testifying witness.

Rejecting Lucas-Hernandez's argument that the government could not have established the required element of residency-status under § 1325(a)(1) absent the testimony about his admissions during the field interrogation, the panel held that any error in admitting the agent's Spanish-to-English translation was harmless considering together the evidence presented from Lucas-Hernandez's A-file, database searches, and the circumstances when he was found by the agent.

## COUNSEL

Parker A. Gardner-Erickson (argued) and Andrew Sherwood, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief, Criminal Division; Tara K. McGrath, United States Attorney; Office of the United States Attorney, San Diego, California; for Plaintiff-Appellee.

Armilla T. Staley-Ngomo (argued) and Kara Hartzler, Assistant Federal Public Defenders, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

## OPINION

BOLTON, District Judge:

Ulises Romeo Lucas-Hernandez appeals the district court's order affirming his misdemeanor conviction for attempted illegal entry under 8 U.S.C. § 1325(a)(1), following a bench trial before a magistrate judge. He asserts that the magistrate judge erred by admitting a border patrol agent's Spanish-to-English translation of Mr. Lucas-Hernandez's field statements under Federal Rule of Evidence 801(d)(2)(A) without determining whether the agent was a "language conduit" under *United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991), *cert. denied*, 506 U.S. 835 (1992).

We hold that *Nazemian* applies to the statements of a party opponent that are translated by a testifying witness, but that any error in admitting Agent Mauler's Spanish-to-English translation was harmless.

# I

## A

In November 2019, Border Patrol Agent Brian Mauler was patrolling a remote, rugged, and sparsely populated area approximately three-and-a-half miles north of the U.S.-Mexico border and sixteen miles east of the nearest port of entry when he discovered shoe prints crossing a dirt road. He followed the footprints until he encountered Lucas-Hernandez and two other individuals at the bottom of a twenty-foot-deep sand wash. After identifying himself as a Border Patrol Agent, he conducted a brief field inspection by asking each individual three questions about their citizenship and immigration status. According to Agent Mauler, he and the individuals communicated with each other entirely in Spanish. Based on the questions he asked and the responses he received, Agent Mauler placed all three individuals under arrest.

## B

Lucas-Hernandez was charged with misdemeanor attempted entry by an alien under 8 U.S.C. § 1325(a)(1). Before trial, Lucas-Hernandez moved to exclude Agent Mauler from testifying to his Spanish-to-English translation of Agent Mauler's questions and Lucas-Hernandez's answers, arguing that the statements were hearsay and that Agent Mauler was not qualified as an expert to translate the statements. At a motion hearing, the magistrate judge denied the motion as to Lucas-Hernandez's hearsay argument, reasoning that "[s]tatements made by a defendant are considered party admissions, not hearsay." The magistrate judge deferred the issue of whether Agent Mauler was a Spanish language translation expert, explaining that Agent

Mauler must "lay a proper foundation that what he or she is saying [is w]hat [Lucas-Hernandez] said and what the information he obtained from [Lucas-Hernandez was, and] that he was able to understand that."

At trial, Agent Mauler testified that he completed a two-month Spanish language program during his five months at the Border Patrol Academy. He conceded that he was not fluent in Spanish "to the point where [he] could have a conversation" but stated he was "[p]roficient enough to be able to conduct [his] duties as a Border Patrol Agent." Agent Mauler explained that he used Spanish "on a daily basis" as a Border Patrol Agent and would "generally ask questions in a way that would be a yes-or-no answer." Agent Mauler also testified that he and Lucas-Hernandez did not appear to have any difficulty understanding or communicating with each other on the day of the arrest. He explained that he had conducted "several hundred" field inspections throughout his career using the same three questions he asked Lucas-Hernandez and that the "vast majority" of them were in Spanish. Agent Mauler then described, in English, Lucas-Hernandez's answers to his field interrogation questions:

> When I asked him what country he's from, he told me he was from Mexico. When I asked if he had any immigration documents to be in the United States, he replied no. When I asked if he illegally entered the United States, he stated that he had.

Agent Mauler later confirmed that Lucas-Hernandez did not present any documents that would have allowed him lawful entry to the United States.

After Agent Mauler's testimony, the United States presented evidence of Lucas-Hernandez's A-file[1] through the testimony of Border Patrol Agent Derrick McCain, Lucas-Hernandez's "A-file custodian." Agent McCain explained that Lucas-Hernandez's A-file indicated that he had been deported from the United States approximately twelve times. Neither the A-file nor the relevant databases searched by Agent McCain contained any documentation allowing Lucas-Hernandez to re-enter the United States. At the conclusion of the bench trial, the magistrate judge found Lucas-Hernandez guilty of violating 8 U.S.C. § 1325(a)(1) and he was sentenced to time served.

Lucas-Hernandez challenged his conviction in district court. Relevant here, Lucas-Hernandez asserted that (1) Agent Mauler's testimony of Lucas-Hernandez's field statements was hearsay and fell outside the hearsay exclusion in Rule 801(d)(2) because Agent Mauler was not a "mere language conduit" under *Nazemian*, 948 F.2d at 528; and (2) Agent Mauler employed specialized knowledge as a Spanish interpreter but was not qualified to give expert testimony. The district court affirmed the magistrate judge's ruling and found that (1) *Nazemian* did not apply, and so Agent Mauler's testimony as to Lucas-Hernandez's field statements was not hearsay; (2) Agent Mauler laid a sufficient foundation that he understood Lucas-Hernandez's statements;[2] and (3) any error in admitting Lucas-

---

[1] An A-file, which stands for "alien file," contains documents showing an individual's immigration history in the United States.

[2] Citing *United States v. Gomez-Norena*, 908 F.2d 497, 499–500 (9th Cir. 1990), the district court also noted that Mr. Lucas-Hernandez did not renew his expert testimony objection at trial but found that "[t]o the

Hernandez's statements was harmless. Lucas-Hernandez timely appealed.

# II

## A

We review de novo the district court's interpretation of the hearsay rule, but we review the court's decision to admit evidence as non-hearsay for abuse of discretion. *United States v. Town of Colorado City*, 935 F.3d 804, 807 (9th Cir. 2019). When the trial court errs in applying the hearsay rule or commits other nonconstitutional error, we must reverse unless the government proves "it is more probable than not that the error did not materially affect the verdict."[3] *United*

---

extent that the matter is properly preserved for appeal," Agent Mauler testified to "matters within his personal knowledge . . . as a lay witness pursuant to Rule 602."

[3] When reviewing nonconstitutional error in direct criminal appeals, the reviewing court must reverse *unless* it can conclude, with "fair assurance," that the error did not substantially influence the verdict. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *see also, e.g.*, *United States v. Bruce*, 394 F.3d 1215, 1229 (9th Cir. 2005) ("In reviewing nonconstitutional error on direct appeal under Rule 52(a), we adhere to the analysis first provided by the Supreme Court in *Kotteakos*"). The Ninth Circuit, sitting en banc, has equated *Kotteakos*' "fair assurance" standard to a "more probable than not" standard, explaining that in criminal appeals involving nonconstitutional error, "[w]e must reverse unless there is a 'fair assurance' of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc) (citing *United States v. Crosby*, 75 F.3d 1343, 1349 (9th Cir. 1996)); *see also, e.g.*, *United States v. Mirabal*, 98 F.4th 981, 987 (9th Cir. 2024) ("We may only conclude that an error was harmless if it is 'more probable than not that the erroneous admission of the evidence did not affect the jury's verdict.'" (citation and internal

*States v. Macias*, 789 F.3d 1011, 1022 (9th Cir. 2015) (quoting *Morales*, 108 F.3d at 1040).

## B

An out-of-court statement offered to prove the truth of the matter asserted is hearsay. Fed. R. Evid. 801(c). But an out-of-court statement made by—and offered against—an opposing party is "not hearsay." Fed. R. Evid. 801(d)(2)(A). In *Nazemian*, we considered "the issue of how to treat extrajudicial [opposing party] statements made through an interpreter when the testifying witness was unable to understand the original language of the declarant and can testify only to the words of the interpreter." 948 F.2d at 526.

The defendant in *Nazemian* challenged the admission of an undercover agent's testimony regarding statements the defendant had made through an interpreter during a series of meetings held in Paris. *Id.* at 524–25. The defendant argued that her statements were "inadmissible hearsay . . . because [the undercover agent] was not able to understand her statements directly, but only heard them as translated by an interpreter, who did not testify at trial." *Id.* at 525. The hearsay issue was "whether the interpreter or [the defendant] should be viewed as the declarant." *Id.* "If the statements are

---

quotation marks omitted)). Though a few Ninth Circuit cases articulated the standard for reviewing improperly admitted evidence differently, any difference does not matter in this case. *See, e.g.*, *United States v. Morales*, 720 F.3d 1194, 1203 (9th Cir. 2013) ("When [the district court] improperly admits hearsay, we may consider that error harmless '*unless* we have grave doubt whether the erroneously admitted evidence substantially affected the verdict.'" (emphasis added) (citation and internal quotation marks omitted)); *United States v. Alvarez*, 358 F.3d 1194, 1214 (9th Cir. 2004) (same).

viewed as [the defendant's] own," they would constitute party admissions under Rule 801(d)(2). *Id.* at 526.

At the time, some federal circuits had found no hearsay problem where the translator could be properly viewed as the defendant's "agent" or where the interpreter acted "merely as a 'language conduit.'" *Id.* (collecting cases) (citation omitted). Rejecting "a more rigid and formalistic application of the agency theory" suggested by our precedent, we determined that "[t]he better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker." *Id.* at 526–27 (citing *United States v. Felix-Jerez*, 667 F.2d 1297, 1300 n.1 (9th Cir. 1982)). To aid in this analysis, we identified four factors to determine "whether the interpreter's statements should be attributed to the defendant": (1) "which party supplied the interpreter"; (2) "whether the interpreter had any motive to mislead or distort"; (3) "the interpreter's qualifications and language skill"; and (4) "whether actions taken subsequent to the conversation were consistent with the statements as translated." *Id.* at 527.

We have thus far applied the *Nazemian* factors only where the witness testified to a third-party interpreter's translation of the declarant's statement. *See, e.g.*, *United States v. Garcia*, 16 F.3d 341, 342–43 (9th Cir. 1994) (drug enforcement agent, who was not fluent in Spanish, testified as to defendants' statements that were translated by a co-conspirator); *United States v. Romo-Chavez*, 681 F.3d 955, 957–61 (9th Cir. 2012) (immigration agent testified as to defendant's statements that were translated by a customs officer after the immigration agent had "exhausted his knowledge of Spanish"); *United States v. Orm Hieng*, 679 F.3d 1131, 1136–39 (9th Cir. 2012) (drug enforcement agent

testified as to defendant's statements that were made through a Cambodian interpreter). Agent Mauler did not rely on a third-party interpreter in this case, as he and Lucas-Hernandez spoke directly to each other in Spanish.

But *Nazemian* itself relied on our decision in *United States v. Ushakow*, 474 F.2d 1244 (9th Cir. 1973) (per curiam), which held that a witness's testimony about an out-of court conversation involving the defendant was admissible under the hearsay rule where the witness "was translating" during the conversation and "was merely a language conduit" for the defendant. *Id*. at 1245. Where, as here and in *Ushakow*, a witness testifies to his own translation of the declarant's statement, the issue remains "whether the translated statements fairly should be considered the statements of the speaker." *Nazemian*, 948 F.2d at 527; *see also Ushakow*, 474 F.2d at 1245. Our cases recognize that the "threshold inquiry in *Nazemian*[,] which asks whether a translated statement may be attributed directly to the original speaker and not be attributed to the interpreter who literally uttered it, stems from principles of the law of evidence." *Orm-Hieng*, 679 F.3d at 1140. To sidestep this threshold inquiry would overlook the text of Rule 801. Fed. R. Evid. 801(d)(2)(A) (a statement is "not hearsay" if it "is offered against an opposing party and . . . *was made by the party* in an individual or representative capacity" (emphasis added)); *see also United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 (9th Cir. 2002) (finding that a purported sworn statement was not admissible under Rule 801(d)(2)(A) because, given the "considerable language barrier," "the foundation was inadequate to demonstrate that [the defendant] really did make the statements" at issue).

The government argues that the *Nazemian* analysis is inapplicable to cases where, as here, "there was no interpreter." We disagree. If anything, it is even *more* critical for courts to assess the language competence of someone who is not a formal interpreter, and whose language proficiency has neither been tested nor certified, when the prosecution seeks to rely on that person's translations of statements purportedly made by or to a criminal defendant. Particularly where a person with minimal language skills attempts to communicate in that language with a potential criminal defendant, the risk of mispronunciation, miscommunication, or mistranslation is high. *See, e.g., United States v. Ramos*, 623 F.3d 672, 678–79, 680–81 (9th Cir. 2010) (holding that an immigration officer with limited Spanish training did not provide a competent translation for purposes of a waiver of appeal, even though she asked routine questions). Applying the *Nazemian* analysis in these circumstances helps to ensure the accuracy of statements or admissions made in another language before they can be admitted against a criminal defendant.

In sum, we hold that *Nazemian*'s four-factor analysis applies to the statements of a party opponent that are translated by the testifying witness.

## III

The *Nazemian* standard is a fact-intensive inquiry that must be applied by the district court on first instance. But, we need not remand here, because any error in admitting Agent Mauler's testimony was harmless. Lucas-Hernandez cites *United States v. Meza-Soria*, 935 F.2d 166 (9th Cir. 1991), in support of his argument that absent the testimony about his admissions during the field interrogation, the government could not have established the required element

of residency-status under 8 U.S.C. § 1325(a)(1). In *Meza-Soria*, we held that "the facts decided in arriving at the deportation order are not conclusive proof of alienage in the criminal proceeding," as the burden of proof is lower in a deportation hearing than in a criminal proceeding. 935 F.2d at 170; *see also United States v. Medina*, 236 F.3d 1028, 1030–31 (9th Cir. 2001). However, we have since clarified that while a deportation order standing alone is insufficient proof of residency-status in a criminal proceeding, the documents in a defendant's A-file "may be considered by the [trier of fact] and, depending on their contents, may constitute sufficient proof of alienage if the [trier of fact] so concludes." *United States v. Ruiz-Lopez*, 749 F.3d 1138, 1142 (9th Cir. 2014).

Here, the government offered additional evidence beyond a prior deportation order to prove that Lucas-Hernandez did not have legal-status. Lucas-Hernandez was found hiding with two other individuals at the bottom of a twenty-foot-deep sand wash in a remote, rugged, and sparsely populated area three-and-a-half miles north of the U.S.-Mexico border and sixteen miles east of the nearest port of entry. He did not present any documentation showing that he was allowed to be in the United States. At trial, Agent McCain testified that Lucas-Hernandez's A-file showed that he had previously been deported twelve times. And both the A-file and the relevant databases searched by Agent McCain indicated that Lucas-Hernandez did not have permission to re-enter the United States. Considering together the evidence presented from Lucas-Hernandez's A-file, the database searches, and the circumstances when he was found by Agent Mauler, we conclude that any error in admitting Lucas-Hernandez's statements more likely than not did not affect the verdict.

# IV

We hold that the *Nazemian* analysis applies to the present circumstances because Agent Mauler testified in English as to Lucas-Hernandez's statements, which were originally made in Spanish. As a result, the magistrate judge was required to determine whether Agent Mauler's translations "fairly should be considered the statements of [Lucas-Hernandez]," applying the factors identified in *Nazemian*, 948 F.2d at 527. However, because any error in admitting Agent Mauler's testimony was harmless, we affirm the district court's ruling upholding Lucas-Hernandez's conviction under 8 U.S.C. § 1325(a)(1).

**AFFIRMED.**